IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------x
In re                                            :      Chapter 11
                                                 :
CCS Medical, Inc., et al.,                       :      Case No. 09-12390 (CSS)
                                                 :
                    Debtors.                     :      Jointly Administered
                                                 :
-------------------------------------------------x      **Docket Ref. No. 16**

## INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364: (I) APPROVING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION SECURED PARTIES; (III) AUTHORIZING DEBTORS TO (A) OBTAIN POST-PETITION FINANCING, AND (B) GRANT SENIOR LIENS, JUNIOR LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF

Upon the Motion, dated July 8, 2009 (the "Motion"), of the above-captioned debtors and

debtors in possession (collectively, the "Debtors"), for entry of interim and, as the case may be,

final orders (I) (A) authorizing and approving the Debtors' use of cash collateral (the "Cash

Collateral") of the Pre-Petition Lenders (as defined below), pursuant to section 363 of title 11 of

the United States Code (the "Bankruptcy Code"); (B) providing the Pre-Petition Lenders with

adequate protection of their interests in certain property of the Debtor Obligors (as defined

below); and (C) pursuant to sections 105(a), 361, 362, 363 and 364 of the Bankruptcy Code,

Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and Local Rules 2002-1, 4001-1 and 6004-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), authorizing the Debtors to enter into the DIP Facility (as defined

below) and grant senior liens, junior liens and superpriority administrative expense claims in

connection therewith; (II) scheduling a final hearing with respect to the relief requested in the

Motion, and (III) granting such other related relief, all as more fully described in the Motion; and the Motion having sought *inter alia* the following particular interim relief:[1]

      (a)    authorization for (a) CCS Medical, Inc. ("CCS") to obtain up to $5,000,000 in principal amount of postpetition financing (the "Interim DIP Loans") under a $10,000,000 aggregate principal amount debtor in possession financing facility (the "DIP Facility") on the terms and conditions set forth in this Interim Order and the Debtor-in-Possession Credit Agreement to be executed and delivered (as hereafter amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Agreement"; together with all agreements, documents and instruments delivered or executed in connection herewith or therewith, including, without limitation, the Agreed Budget (as defined in paragraph F below), in each case as hereafter amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Documents"), among CCS, CCS Acquisition Holding-Sub, Inc. ("Holdings"), CCS Medical Holdings, Inc. ("Holdings-Parent") and each of the direct and indirect subsidiaries of CCS named therein or party thereto from time to time (such subsidiaries, collectively with Holdings and Holdings-Parent, the "DIP Guarantors"), the lenders from time to time party thereto (collectively, the "DIP Lenders") and Imperial Capital, LLC, as administrative agent and collateral agent (in such capacity, the "DIP Agent"), and (b) each of the DIP Guarantors to guaranty CCS's obligations in respect of the DIP Facility;

---

[1] Unless otherwise indicated, capitalized terms used but not immediately defined herein have the meanings ascribed to such terms later in this Interim Order.

(b)     authorization for the Debtors to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(c)     authorization for the Debtors to grant security interests, liens and superpriority claims (including a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and limited consensual priming liens pursuant to section 364(d)(1) of the Bankruptcy Code) to the DIP Agent and DIP Lenders to secure all obligations of the Debtors in respect of the DIP Facility;

(d)     authorization of the Debtors' use of Cash Collateral in which the Pre-Petition Lenders have an interest in accordance with the terms of this Interim Order;

(e)     authorization of the Debtors' granting of adequate protection to the Pre-Petition Lenders for, among other things, the Debtors' use of Cash Collateral and the Debtors' use, and any resulting diminution in the value of, the other Pre-Petition Collateral;

(f)     that, pursuant to the applicable provisions of the Bankruptcy Code, including sections 361, 363, 503(b) and 507(b) thereof and the terms of this Interim Order, the Pre-Petition Lenders, whose Cash Collateral and other Pre-Petition Collateral may be used, sold or leased by the Debtors, be granted the following as adequate protection of their interests: (i) a superpriority claim having priority over all administrative expenses, subject and subordinate only to the Carve-Out Expenses, the claims under the DIP Facility and in the case of the Second Lien Lenders, superpriority claims junior to the superpriority claims of the First Lien Lenders, (ii) replacement liens

on substantially all property and assets of the Debtors, wherever located, subject only to (x) the Carve-Out Expenses, (y) the DIP Liens (as defined below), and (z) any valid, perfected, enforceable and unavoidable liens (A) existing as of the Petition Date or (B) pursuant to sections 546 and 362(b)(18) of the Bankruptcy Code, which are otherwise senior to the liens in favor of the Pre-Petition Lenders, but in any event excluding liens in favor of the Pre-Petition Lenders or otherwise securing the First Lien Obligations or the Second Lien Loans (such liens described in this clause (z), the "Permitted Liens"); and (iii) payment of all reasonable costs and expenses of any counsel or financial advisors to Highland Capital Management, L.P. and its affiliates, in their capacities as First Lien Lenders, and the First Lien Agent, including reasonable attorney and advisor fees on a current basis without the need for filing fee applications or fee statements; and

(g)     that, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") be held before this Court to consider entry of this interim order (the "Interim Order") and further requesting that a final hearing (the "Final Hearing") thereafter be held before this Court to consider entry of a final order (the "Final Order") authorizing on a final basis the Debtors' use of Cash Collateral, the granting of adequate protection to the Pre-Petition Lenders, approval of and authority to enter into the DIP Facility and provide the DIP Liens and such other relief as set forth herein and in the Motion.

**IT APPEARING** that, pursuant to Bankruptcy Rule 4001(c)(1), notice of the Interim Hearing upon the Motion having been given to (a) the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) counsel to the First Lien Agent; (c) counsel to the Second Lien Agent; (d) counsel to the lenders under the prepetition unsecured credit agreement of Holdings; (e) counsel to the proposed DIP Agent; (f) all other known parties with liens of record

on assets of the Debtors as of the Petition Date; (g) the taxing authorities with jurisdiction over the Debtors' assets as of the Petition Date; and (h) the Debtors' fifty (50) largest unsecured creditors on a consolidated basis, (collectively, the "Notice Parties"); and this Court having concluded, given the nature of the relief sought in the Motion, that the foregoing notice was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and that no further notice relating to this proceeding is necessary or required; and the Interim Hearing having been held on July 9, 2009; and upon all of the pleadings filed with the Court, and all of the proceedings held before the Court; and upon the Affidavit of Stephen M. Saft in Support of Chapter 11 Pleadings (the "Saft Affidavit"); and upon the record of the Interim Hearing; and the Court having noted the appearances of all parties in interest in the record of this Court; and all objections to the relief requested in the Motion having been resolved or overruled by the Court, and after due deliberation and consideration, and sufficient cause appearing therefor;

**IT IS HEREBY FOUND**:

A.      Commencement of the Cases.  On July 8, 2009 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing in possession of their property, and operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.      Jurisdiction.  The Court has jurisdiction over the Debtors' bankruptcy cases (the "Cases"), the parties and the Debtors' property pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein include sections 105, 361, 362, 363, 364,

503, and 507 of the Bankruptcy Code and Rules 2002, 4001(b) and (d), 6004, and 9014 of the Federal Rules of Bankruptcy Procedure. Venue of the Cases in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. The First Lien Credit Agreement and Swap Agreements. Prior to the Petition Date, each of the Debtors other than Holdings-Parent (collectively, the "Debtor Obligors") entered into that certain First Lien Credit Agreement, dated as of September 30, 2005 (the "First Lien Credit Agreement," and together with the collateral documents, instruments and other agreements entered into in connection therewith, the "First Lien Loan Documents"), with Wachovia Bank, National Association as the administrative and collateral agent (in its capacity as such, the "First Lien Agent"), and the lenders party thereto from time to time (in their capacities as such, the "First Lien Lenders"). Pursuant to the First Lien Credit Agreement, the First Lien Lenders extended revolving credit loans and term loans (the "First Lien Loans") to CCS in the aggregate principal amount of up to $370,000,000. Pursuant to the First Lien Loan Documents, the Debtor Obligors. other than CCS (the "Debtor Guarantors"), are liable as guarantors for payment of the First Lien Loans and the other obligations under the First Lien Loan Documents. In addition, the Debtor Obligors are party to two interest rate swap agreements (together, the "Swap Agreements"), one with JPMorgan Chase Bank, N.A. and one with Wachovia Bank, N.A. (together, the "Swap Counterparties"). The Debtor Obligors' outstanding obligations under the Swap Agreements were in excess of $13,000,000 (the "Hedge Claims"), and are secured pari passu with the First Lien Loans (the First Lien Loans and the Hedge Claims, together with all other obligations arising under the First Lien Loan Documents (including without limitation all interest, fees and expenses arising thereunder) shall be referred to collectively as the "First Lien Obligations," the Swap Counterparties shall be deemed included

within the definition of First Lien Lenders, and the Swap Agreements shall be deemed included within the definition of First Lien Loan Documents). To secure the First Lien Obligations, the Debtor Obligors granted to the First Lien Agent, for the benefit of the First Lien Lenders, first priority liens on, and security interests in, substantially all of the Debtor Obligors' assets, both tangible and intangible, real and personal, including *inter alia*, the Debtor Obligors' accounts, inventory, machinery and equipment, owned real property, chattel paper, books and records, intellectual property, licenses, deposit accounts, negotiable collateral, securities, general intangibles, right, title and interest in and to all shares of capital stock of each of their subsidiaries and the proceeds and recoveries of the foregoing (collectively, and as more particularly described in the First Lien Loan Documents and Second Lien Loan Documents, the "Prepetition Collateral"). The Debtors acknowledge and agree that the Debtor Obligors are duly and validly indebted to the First Lien Lenders in respect of outstanding and contingent obligations under the First Lien Loan Documents.

D. Second Lien Credit Agreement. Prior to the Petition Date, the Debtor Obligors entered into that certain Second Lien Credit Agreement, dated as of September 30, 2005 (the "Second Lien Credit Agreement," and together with the guarantee and collateral documents, instruments and other agreements entered into in connection therewith, the "Second Lien Loan Documents"), with Wachovia Bank, National Association as the administrative and collateral agent[2] (any successor agent thereunder, in its capacity as such, the "Second Lien Agent"), and the lenders party thereto from time to time (in their capacities as such, the "Second Lien Lenders"; the First Lien Lenders and the Second Lien Lenders will be referred to collectively as the "Pre-Petition Lenders"). Pursuant to the Second Lien Credit Agreement, the Second Lien

---

[2] Wachovia Bank, National Association, has resigned as the administrative and collateral agent pursuant to the terms of the Second Lien Credit Agreement.

Lenders extended term loans (the "Second Lien Loans") to CCS in the aggregate principal amount of $110,000,000. Pursuant to the Second Lien Loan Documents, the Debtor Guarantors are liable as guarantors for payment of the Second Lien Loans and the other obligations under the Second Lien Loan Documents. To secure their obligations under the Second Lien Loan Documents, the Debtor Obligors granted to the Second Lien Agent, for the benefit of the Second Lien Lenders, second priority liens on, and security interests in the Prepetition Collateral. The Debtors acknowledge and agree that the Debtor Obligors are duly and validly indebted to the Second Lien Lenders in respect of outstanding and contingent obligations under the Second Lien Loan Documents.

E. **Intercreditor Agreement.** In connection with the execution and delivery of the First Lien Loan Documents and the Second Lien Loan Documents, the First Lien Agent and the Second Lien Agent entered into that certain Intercreditor Agreement, dated as of September 30, 2005, setting forth the relative lien priorities and other rights and remedies between the First Lien Lenders and the Second Lien Lenders with respect to their respective interests in the Pre-Petition Collateral (the "Intercreditor Agreement"). Pursuant to the Intercreditor Agreement, the Second Lien Agent and Second Lien Lenders have agreed: that they will raise no objection to the use of Cash Collateral on the terms provided herein; that they will not request adequate protection other than as set forth herein; and that they will subordinate their liens in the Prepetition Collateral to the DIP Liens, as contemplated herein.

F. **The Agreed Budget.** The Debtors believe that the operating budget, attached as Exhibit "A" hereto (the "Agreed Budget"), is achievable and will allow the Debtors to operate in the Cases without the accrual of unpaid administrative expenses. The First Lien Lenders and DIP Lenders are relying upon the Debtors' compliance with the Agreed Budget (subject to

amendment as contemplated in the DIP Agreement and reasonably acceptable to the First Lien Agent or the majority First Lien Lenders) in accordance with this Interim Order in, respectively, determining to consent to the Debtors' use of Cash Collateral and extending the DIP Facility.

G. <u>Consensual Use of Cash Collateral</u>. First Lien Lenders holding at least a majority of the outstanding First Lien Obligations have consented to the Debtors' use of Cash Collateral in the ordinary course of business in accordance with the Agreed Budget, subject to the express terms and conditions set forth in this Interim Order. Further, by virtue of the First Lien Lenders' consent to the Debtors' use of the Cash Collateral, pursuant to the terms of the Intercreditor Agreement, the Second Lien Lenders are deemed to have consented to the Debtors' use of Cash Collateral pursuant to the express terms and conditions set forth in this Interim Order.

H. <u>Debtors' Stipulations and Waivers Regarding the First Lien Lenders' Interests</u>. In consideration of the Debtors' use of Cash Collateral, the Debtors stipulate and acknowledge that:

(i) the First Lien Loan Documents entered into as of September 30, 2005 (and as amended, modified or supplemented from time to time thereafter), between and among, *inter alia*, the Debtor Obligors, the First Lien Lenders, and the First Lien Agent create legal, valid and binding obligations of the Debtor Obligors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

(ii) as of the Petition Date, the principal balance due and owing under the revolving credit facility of the First Lien Credit Agreement was approximately $26,000,000, plus accrued and unpaid interest, fees, costs and expenses, the principal balance due and owing under the term loan facility of the First Lien Credit Agreement equaled approximately $303,057,353, plus accrued and unpaid interest, fees, costs and

expenses, the outstanding amount of undrawn letters of credit issued under the First Lien Credit Agreement equaled $915,720, plus accrued and unpaid fees, costs and expenses, and the outstanding obligations arising under the Swap Agreements were in excess of $13,000,000 on a mark-to-market basis;

(iii)    the liens and security interests held by the First Lien Agent on behalf of itself and the First Lien Lenders with respect to the Prepetition Collateral pursuant to the First Lien Loan Documents are valid, enforceable, properly perfected and non-avoidable, with such Prepetition Collateral consisting of substantially all of the Debtor Obligors' respective assets, tangible and intangible, real and personal, including, without limitation, (a) the Debtor Obligors' respective accounts, inventory, machinery, equipment, fixed assets, chattel paper, books and records, deposit accounts, money, and investment property, (b) owned real property and improvements, including without limitation properties located in Hillsborough County, Florida, (c) the Debtor Obligors' respective intellectual properties and licenses, and (d) pledges of all right, title and interest in 100% of the outstanding stock in CCS (by Holdings) and pledges of all right, title and interest in 100% of the outstanding stock of the direct and indirect domestic subsidiaries of CCS;

(iv)    the Debtors (i) waive any claim, counterclaim, recoupment, setoff or defense of any kind or nature which would in any way affect the validity, enforceability and non-avoidability of the First Lien Obligations owing under the First Lien Loan Documents or any of the First Lien Lenders' liens, claims or security interests, or, reduce or affect the obligations of the Debtors to pay any of the First Lien Agent's or the First Lien Lenders' claims; and (ii) further waive any offsets, defenses, claims, or counterclaims against the First Lien Agent and the First Lien Lenders, or their respective

officers, directors, employees, attorneys, representatives, parent, affiliates, predecessors, successors, or assigns, whether known or unknown, at law or in equity, from the beginning of the world through this date arising under the First Lien Loan Documents. These waivers shall be binding on the Debtors and any of their successors-in-interest and assigns but are subject to the provisions contained in paragraph 27 below.

(I)     Debtors' Stipulations and Waivers Regarding the Second Lien Lenders' Interests. In consideration of the Debtors' use of Cash Collateral, the Debtors stipulate and acknowledge that:

(i)     the Second Lien Loan Documents entered into as of September 30, 2005 (and as amended, modified or supplemented from time to time thereafter), between and among, inter alia, the Debtors, the Second Lien Lenders, and the Second Lien Agent create legal, valid and binding obligations of the Debtor Obligors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

(ii)     as of the Petition Date, the principal balance due and owing under the Second Lien Credit Agreement was approximately $110,000,000, plus interest, fees, costs and expenses;

(iii)     the liens and security interests held by the Second Lien Agent on behalf of itself and the Second Lien Lenders with respect to the Prepetition Collateral pursuant to the Second Lien Loan Documents are valid, enforceable, properly perfected and non-avoidable, with such Prepetition Collateral consisting of substantially all of the Debtor Obligors' respective assets, tangible and intangible, real and personal, including, without limitation, (a) the Debtor Obligors' respective accounts, inventory, machinery,

equipment, fixed assets, chattel paper, books and records, deposit accounts, money, and investment property, (b) owned real property and improvements, including without limitation properties located in Hillsborough County, Florida, (c) the Debtor Obligors' respective intellectual properties and licenses, and (d) pledges of all right, title and interest in 100% of the outstanding stock in CCS Medical (by Holdings) and pledges of all right, title and interest in 100% of the outstanding stock of the direct and indirect domestic subsidiaries of CCS Medical;

(iv) the Debtors (i) waive any claim, counterclaim, recoupment, setoff or defense of any kind or nature which would in any way affect the validity, enforceability and non-avoidability of the Second Lien Loans owing under the Second Lien Loan Documents or any of the Second Lien Lenders' liens, claims or security interests, or, reduce or affect the obligations of the Debtors to pay any of the Second Lien Agent's or the Second Lien Lenders' claims; and (ii) further waive any offsets, defenses, claims, or counterclaims against the Second Lien Agent and the Second Lien Lenders, or their respective officers, directors, employees, attorneys, representatives, parent, affiliates, predecessors, successors, or assigns, whether known or unknown, at law or in equity, from the beginning of the world through this date arising under the Second Lien Loan Documents. These waivers shall be binding on the Debtors and any of their successors-in-interest and assigns but are subject to the provisions contained in paragraph 27 below.

J. _Good Cause for DIP Facility._ Good cause has been shown for the entry of this Interim Order. The Debtors have an immediate need to obtain the DIP Facility and the interim relief sought in the Motion, in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors, make payroll and satisfy other

working capital and general corporate purposes of the Debtors. The DIP Facility is necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtors' estates. Accordingly, the Debtors and their estates will suffer immediate and irreparable harm unless the Debtors are immediately authorized to obtain the DIP Facility on the terms and conditions set forth in this Interim Order.

K.     No Alternative Sources of Financing. The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, this Interim Order and the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code without the Debtors granting the DIP Liens and the DIP Lenders' Superpriority Claims (as defined in paragraph 20 below), in each case on the terms and conditions set forth in this Interim Order and the DIP Documents.

L.     Reasonably Equivalent Value. The terms of the DIP Facility are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration. The Debtors require additional financing under the DIP Facility under the terms of this Interim Order in order to satisfy their postpetition liquidity needs. After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Agent and the DIP Lenders pursuant to the terms of this Interim Order and the DIP Documents represents the best financing presently available to the Debtors.

M.    Good Faith.  The DIP Documents have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the DIP Agent and the DIP Lenders.  All DIP Obligations (as defined in paragraph 11 below) have been, and shall be deemed to have been, extended by the DIP Agent and the DIP Lenders in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to, and are hereby granted, the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is stayed, vacated, reversed, amended or modified on appeal or otherwise.

NOW, based upon the Motion of the Debtors and the record before this Court, and good cause appearing therefor,

**IT IS ORDERED, ADJUDGED AND DECREED** that:

### Cash Collateral Usage / Adequate Protection

(1)    Disposition.  The relief requested in the Motion with respect to the entry of this Interim Order is GRANTED on an interim basis, and any objections thereto that have not previously been withdrawn are hereby overruled.  Subject to the terms hereof, this Interim Order is valid immediately and is fully effective upon its entry.  The use of Cash Collateral authorized hereunder shall expire thirty (30) days from the Petition Date, unless this Court enters a further order approving the use of Cash Collateral on a final basis (in form and substance acceptable to the First Lien Agent and the holders of more than fifty percent (50%) of the outstanding First Lien Obligations (the "Required First Lien Lenders"), in which event the use of Cash Collateral shall be as provided for in the Final Order.

(2)    Authorization to Use Cash Collateral.  The Debtors are hereby authorized to use Cash Collateral in accordance with and subject to the terms and conditions of this Interim Order.

The Debtors' right to use Cash Collateral under this Interim Order shall commence on the date of the entry of this Interim Order and expire on the date (the "Termination Date") that is the earliest to occur of: (i) thirty (30) days from entry of the Interim Order, unless the Final Order shall have been entered; (ii) the fifth (5th) business day following the delivery of written notice to the Debtors by the First Lien Agent of the failure of the Debtors to comply substantially with any of the terms or conditions of this Interim Order; (iii) the conversion of any of the Cases to a chapter 7 case or appointment of a trustee or examiner with expanded powers; (iv) any stay, reversal, vacatur, rescission or other modification of the terms of this Interim Order not consented to by the First Lien Agent; (v) any Event of Default (as defined in the DIP Agreement) shall have occurred and any notice required pursuant to the DIP Documents to cause the DIP Obligations to become due and payable shall have been given, or the DIP Agreement shall otherwise have been terminated; and (vi) November 15, 2009. In no event shall the Debtors be authorized to use the Cash Collateral for any purposes or under any terms other than those set forth herein, in the Agreed Budget, or as may otherwise be approved by this Court following notice and hearing as may be required.

(3)    Carve-Out Expenses. "Carve-Out Expenses" shall mean:

(a)    amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court; and

(b)    any and all allowed fees and expenses ("Priority Professional Expenses") of attorneys, accountants, and other professionals retained in these Cases pursuant to section 327 or 1103 of the Bankruptcy Code by the Debtors and by the official committee of unsecured creditors appointed in these Cases pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee") as the case may be, incurred (i) prior

to the occurrence of an Event of Default (as defined in the DIP Agreement); and (ii) upon the occurrence and during the continuation of an Event of Default (A) in an aggregate amount not to exceed $750,000, which amount shall be used to pay Priority Professional Expenses incurred by the Debtors' professionals retained in these Cases after the occurrence of such Event of Default, (B) in an aggregate amount not to exceed $250,000, which amount may be used to pay the Priority Professional Expenses incurred by the attorneys and financial advisors of any statutory committee appointed in these Cases, and the reimbursement of expenses allowed by the Bankruptcy Court and incurred by such committee members in the performance of their duties, after the occurrence of such Event of Default (inclusive of any holdbacks required by the Court), and (C) an amount up to $250,000 in the aggregate may be used for the reasonable fees and expenses of a chapter 7 trustee in a case of any of the Debtors under chapter 7 of the Bankruptcy Code (the "Professional Expense Caps"); provided, that any payments actually made to such professionals or incurred by a chapter 7 trustee (pursuant to clause (ii) and subject to the limitations set forth herein) under sections 330 or 331 of the Bankruptcy Code or any other provision of the Bankruptcy Code or order of the Bankruptcy Court after the occurrence of an Event of Default (and during the continuance of such an Event of Default) on account of fees and expenses actually incurred after the occurrence of an Event of Default shall reduce the respective Professional Expense Cap on a dollar-for-dollar basis.

(c)     Notwithstanding the foregoing, the Carve-Out Expenses shall not include, and the Cash Collateral, DIP Facility proceeds and the proceeds of the Pre-Petition Collateral and DIP Collateral (as defined below) shall not be used for, the payment or

reimbursement of, any fees or disbursements of the Debtors, the Creditors' Committee or any trustee appointed in these Cases, or any substantial contribution expenses, any associated professional compensation, or any compensation for substantial contribution, incurred in connection with the assertion and prosecution (as opposed to the investigation) of, or joinder in, any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief commencing or prosecuting any action (whether arising under state law, the Bankruptcy Code or other federal law) (A) asserting claims against the DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders, the Second Lien Agent, or the Second Lien Lenders, with respect to the liens and security interests securing, or any payment received on account of, the obligations of any of the Debtors under the DIP Documents, the First Lien Loan Documents or the Second Lien Loan Documents, respectively, or under this Interim Order or the Final Order; (B) invalidating, disallowing, recharacterizing, setting aside, avoiding, subordinating, in whole or in part or taking or attempting to take any other action to render unenforceable, the DIP Obligations, DIP Liens and security interests in the DIP Collateral pursuant to the DIP Documents, this Interim Order or the Final Order; (C) invalidating, disallowing, recharacterizing, setting aside, avoiding, subordinating, in whole or in part or taking or attempting to take any other action to render unenforceable, the First Lien Lenders' claims, liens, Senior Replacement Liens (as defined below) and security interests in the Prepetition Collateral pursuant to the First Lien Loan Documents, this Interim Order or the Final Order; (D) invalidating, disallowing, recharacterizing, setting aside, avoiding, subordinating, in whole or in part or taking or attempting to take

any other action to render unenforceable, the Second Lien Lenders' claims, liens, Junior Replacement Liens (as defined below), and security interests in the Prepetition Collateral pursuant to the Second Lien Loan Documents, this Interim Order or the Final Order; (E) preventing, hindering or otherwise delaying any of the DIP Agent's or the DIP Lenders' assertion, enforcement or realization on the DIP Collateral in accordance with the terms and conditions of this Interim Order; or (F) seeking to amend or modify any of the rights granted to the DIP Agent or the DIP Lenders under this Interim Order or the DIP Documents, in each case without such party's prior written consent given in its sole discretion.

(d)     Nothing contained in this paragraph shall (i) be construed to exempt those attorneys, accountants, and other professionals retained in these Cases pursuant to section 327 or 1103 of the Bankruptcy Code by the Debtors and by the Creditors' Committee hereafter receiving interim compensation payments or reimbursement of expenses from compliance with any Court-approved procedure for compensation or otherwise from applicable provisions of bankruptcy law, including but not limited to requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications, and when applicable, any subsequent order of this Court requiring that such payments be disgorged, (ii) be construed as consent to the allowance of any fees and expenses referred to above, or (iii) be construed to affect any right of the Pre-Petition Lenders to object to the reasonableness of such amounts;

(4)     <u>First Lien Lenders' Adequate Protection</u>.  The First Lien Agent and First Lien Lenders are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Prepetition Collateral to the extent that there is a

diminution in the value of their interest in the Prepetition Collateral from and after the Petition Date resulting from the sale, lease or use by the Debtors (or other decline in value) of the Cash Collateral and the Prepetition Collateral, the priming of the First Lien Agent's liens and security interests in the Prepetition Collateral by the DIP Liens, and the imposition of the automatic stay. As adequate protection for such diminution from and after the Petition Date, the First Lien Agent, for itself and on behalf of the First Lien Lenders, is hereby granted, valid, perfected and enforceable security interests (the "Senior Replacement Liens") equivalent to liens granted under section 364(c) of the Bankruptcy Code in and upon all of the assets of the Debtors, in existence prior to the Petition Date or created after the Petition Date, including, without limitation, all of the Debtors' accounts, contract rights, inventory, machinery and equipment, licenses, general intangibles, real property, and such other property of the Debtors (excluding for purposes of this Interim Order actions for preferences, fraudulent conveyances and other avoidance power claims under sections 544, 545, 547, 548, 550, 552(b) and 553 of the Bankruptcy Code (the "Avoidance Actions")), whether such property was owned on the Petition Date or thereafter created, acquired or arising, and all improvements, additions and extensions thereto, all replacements thereof, all books and records with respect thereto and all products and proceeds of the foregoing (collectively, the "DIP Collateral"). The Senior Replacement Liens shall be subject only to (i) the Permitted Liens, (ii) the Carve-Out Expenses, and (iii) any DIP Liens.

(a)     The Senior Replacement Liens granted herein:  (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of the First Lien Agent and the First Lien Lenders on the Petition Date; (ii) are and shall be valid, perfected, enforceable and effective as of the date of the entry of this Interim Order without any further action by the Debtors, the First Lien Agent, or the First Lien Lenders,

and without the necessity of the execution, filing or recordation of any financing statements, security agreements, vehicle lien applications, filings with the United States Patent and Trademark Office, mortgages or other documents; (iii) shall secure the payment of indebtedness to the First Lien Agent and the First Lien Lenders, as the case may be, in an amount equal to any diminution in value of the First Lien Lenders' Cash Collateral or any other Prepetition Collateral; (iv) shall not be subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; and (v) shall not hereafter be subordinated to or made pari passu with any other lien or security interest (other than the Permitted Liens and the DIP Liens) arising after the Petition Date, under section 364(d) of the Bankruptcy Code or otherwise, absent the consent of the First Lien Agent and the Required First Lien Lenders.

(b)     In addition to the Senior Replacement Liens granted to the First Lien Agent on behalf of itself and the First Lien Lenders pursuant to this Interim Order, the First Lien Agent and the First Lien Lenders are hereby granted a super-priority administrative expense claim under sections 503(b)(1), 507(a), and 507(b) of the Bankruptcy Code (the "First Lien Lenders' Superpriority Claims") for the amount by which adequate protection afforded herein for any diminution in value of the First Lien Lenders' interest in the Cash Collateral or any other Prepetition Collateral from and after the Petition Date proves to be inadequate. Such First Lien Lenders' Superpriority Claims shall be allowed against each Debtor and its respective estate and have priority over all other costs and expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 363, 364, 503, 507, 726, 1113 or 1114 or any other provision of the

Bankruptcy Code or otherwise, and shall be subject only to the Carve Out Expenses and the DIP Lenders' Superpriority Claims. The First Lien Lenders' Superpriority Claims shall be deemed legal, valid, binding and enforceable claims and expenses against the Debtors and their estates, and not subject to subordination (except as expressly provided in this Interim Order), impairment or avoidance, for all purposes in the Cases and any Successor Case (as defined below). The First Lien Lenders' Superpriority Claims shall be payable from, and have recourse to, any and all property and assets of each Debtor.

(c)     As further adequate protection for the Debtors' use of the Cash Collateral and the other Prepetition Collateral, the Debtors shall pay monthly: (i) the actual and reasonable fees, costs and expenses of the First Lien Agent, including without limitation the reasonable legal fees and costs of counsel (including local counsel) for the First Lien Agent and the reasonable fees and expenses of the financial advisor retained for the benefit of the First Lien Agent, and (ii) the actual and reasonable fees, costs and expenses of Highland Capital Management, L.P. and its affiliates, solely in their capacities as First Lien Lenders, including the reasonable legal fees and costs of a single counsel (and an additional local counsel) therefor, in each case incurred pre-petition or post-petition, without the need for compliance with the U.S. Trustee guidelines or filing any further application or statement with this Court; provided that the Court shall have jurisdiction to determine any dispute concerning such invoices and the First Lien Agent and the First Lien Lenders shall deliver statements of fees and expenses incurred to the Creditors' Committee and the U.S. Trustee.

(5)     Limitations under Section 552(b) of the Bankruptcy Code. At no time during the Cases shall the limitation permitted by section 552(b) of the Bankruptcy Code, based on the

equities of the case, on the extension of the liens and Senior Replacement Liens to cover proceeds of the Prepetition Collateral be imposed on or against the First Lien Agent, the First Lien Lenders or the Prepetition Collateral.

(6) <u>Information Available to First Lien Agent</u>. The Debtors shall furnish to the counsel of the First Lien Agent, such financial and other information as the First Lien Agent shall reasonably request including, but not limited to, the following:

(a) Simultaneously with their filing, any financial information and pleadings filed with the Bankruptcy Court;

(b) All reports required to be provided to the DIP Lenders;

(c) All financial information and reports prepared by the Debtors, as required by the Bankruptcy Court or by the Operating Guidelines and Reporting Requirements of the U.S. Trustee's Office; and

(d) All other reports and financial information required by the First Lien Credit Agreement.

(7) <u>First Lien Lenders' Reservation of Rights</u>. Each of the First Lien Lenders has expressly reserved its rights to request additional or further adequate protection of its interests in the Prepetition Collateral, to move for relief from the automatic stay, or to request any other relief in this case should circumstances warrant; <u>provided</u>, <u>however</u>, that (a) the DIP Liens securing the DIP Facility shall not be affected thereby, and (b) the rights of the First Lien Lenders and the Second Lien Lenders shall at all times remain subject to the Intercreditor Agreement. The Debtors reserve their rights to oppose any such request for additional or further protection or relief.

(8)     <u>Second Lien Lenders' Adequate Protection</u>.  Subject to the terms of the Intercreditor Agreement, as adequate protection of the interests, if any, of the Second Lien Lenders in the Cash Collateral and the Prepetition Collateral, the Second Lien Agent and the Second Lien Lenders are entitled, pursuant to sections 361, 363(e) and (to the extent applicable) 364(d)(1) of the Bankruptcy Code, to adequate protection to the extent that there is a diminution in the value of such interest from and after the Petition Date resulting from the sale, lease or use by the Debtors (or other decline in value) of the Cash Collateral and the Prepetition Collateral, any priming of the Second Lien Lenders' liens and security interests in the Prepetition Collateral by the DIP Liens securing the DIP Facility, and the imposition of the automatic stay. As adequate protection for any diminution in value of the Second Lien Lenders' interest in the Prepetition Collateral from and after the Petition Date, the Second Lien Agent, on behalf of the Second Lien Lenders, is hereby granted, valid, perfected and enforceable security interests (the "<u>Junior Replacement Liens</u>") equivalent to liens granted under section 364(c) of the Bankruptcy Code in and upon the DIP Collateral, whether such property was owned on the Petition Date or thereafter created, acquired or arising, and all improvements, additions and extensions thereto, all replacements thereof, all books and records with respect thereto and all products and proceeds of the foregoing. The Junior Replacement Liens shall be subject only to (i) any DIP Liens, (ii) the liens of the First Lien Lenders and the Senior Replacement Liens; (iii) the Permitted Liens; and (iv) the Carve Out Expenses.

(a)     The Junior Replacement Liens granted herein:  (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of Second Lien Lenders on the Petition Date; (ii) are and shall be valid, perfected, enforceable and effective as of the date of the entry of this Interim Order without any further action by the

Debtors or the Second Lien Lenders and without the necessity of the execution, filing or recordation of any financing statements, security agreements, vehicle lien applications, filings with the United States Patent and Trademark Office, mortgages or other documents; and (iii) shall secure the payment of the Second Lien Loan Obligations in an amount equal to any diminution in value of the Prepetition Collateral.

(b)     In addition to the Junior Replacement Liens granted to the Second Lien Lenders pursuant to this Interim Order, the Second Lien Agent and the Second Lien Lenders are hereby granted a super-priority administrative expense claim under sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "Second Lien Lenders' Superpriority Claims") for the amount by which adequate protection afforded herein for any diminution in value of the Second Lien Lenders' interest, if any, in the Prepetition Collateral from and after the Petition Date proves to be inadequate. Such Second Lien Lenders' Superpriority Claims shall be allowed against each Debtor and its respective estate and have priority over all other costs and expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 363, 364, 503, 507, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise, subject only to (i) the DIP Lenders' Superpriority Claims, (ii) the First Lien Lenders' Superpriority Claims, and (iii) the Carve-Out Expenses. The Second Lien Lenders' Superpriority Claims shall be deemed legal, valid, binding and enforceable claims and expenses against the Debtors and their estates, and not subject to subordination (except as expressly provided in this Interim Order), impairment or avoidance, for all purposes in the Cases and any Successor Case. The Second Lien Lenders' Superpriority Claims shall be payable from, and have recourse to, any and all property and assets of each Debtor.

(9)     Limitations under Section 552(b) of the Bankruptcy Code.  At no time during the Cases shall the limitation permitted by Bankruptcy Code Section 552(b), based on the equities of the case, on the extension of the liens and Junior Replacement Liens to cover proceeds of the Prepetition Collateral be imposed on or against the Second Lien Agent, the Second Lien Lenders, or the Prepetition Collateral.

(10)     Reservation of Rights.     Nothing contained in this Interim Order shall prejudice the rights of the Second Lien Lenders to request additional or further adequate protection of their interests in the Prepetition Collateral, to move for relief from the automatic stay, or to request any other relief in this case should circumstances warrant; provided, however, that (a) the DIP Liens securing the DIP Facility shall not be affected thereby, and (b) the rights and priorities of the First Lien Lenders and the Second Lien Lenders shall at all times remain subject to the Intercreditor Agreement.  The Debtors reserve their rights to oppose any such request for additional or further protection or relief.

## DIP Facility

(11)     Maximum Amount.  The terms and conditions of the DIP Agreement are hereby approved on an interim basis.  The Debtors are authorized to enter into and perform the transactions contemplated by this Interim Order and the DIP Documents and, in the case of CCS, to borrow under the DIP Agreement up to an aggregate principal amount of $5,000,000 for general corporate purposes of the Debtors, and to pay certain costs and expenses of administration of the Cases pursuant and subject to the terms and conditions of this Interim Order and the DIP Documents.  For purposes of this Interim Order, the term "DIP Obligations" shall mean and include all amounts owing under the DIP Agreement or other DIP Documents (including, without limitation, all "Obligations" as defined in the DIP Agreement) and shall

include the principal of, interest on, fees, costs, expenses and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other reasonable and documented fees, costs and expenses that are chargeable by or reimbursable to the DIP Agent or the DIP Lenders under this Interim Order, the DIP Agreement or other DIP Documents), and any indemnity claims, in each case whether contingent or otherwise and whether arising before or after any "Event of Default" under the DIP Agreement.

(12)    Further Assurances.  In furtherance of the foregoing and without further notice, motion or application to, order of, or hearing before, this Court, each Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and documents that the DIP Agent determines to be reasonably required or necessary for such Debtor's performance of its obligations under the DIP Documents or this Interim Order, including without limitation:

    (i)    the execution and delivery of, and performance of the transactions contemplated by, the DIP Documents;

    (ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtors, the DIP Agent and the DIP Lenders may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents; provided, however, that a copy of any such amendment or other modification shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee and the respective counsel to the Creditors Committee, the First Lien Agent and the Second Lien Agent, each of whom shall have five (5) business days from the date of such notice within which to object in writing to such modification or amendment.  If any such party timely objects to such proposed modification or amendment, then such modification or amendment shall only be permitted pursuant to an order of this Court;

(iii) the payment to the DIP Agent and the DIP Lenders, as the case may be, of the DIP Obligations as and when due as set forth in this Interim Order or the DIP Documents; and

(iv) the prompt performance of all other acts required under or in connection with this Interim Order or the DIP Documents, including, without limitation, prompt delivery to the DIP Agent (and its respective professionals) of such reporting and financial information and access to the Debtors' books and records, in each case, as may be reasonably requested by the DIP Agent from time to time.

(13) <u>No Impairment</u>. Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors, be enforceable against the Debtors in accordance with the terms of this Interim Order and the DIP Documents and shall be incorporated by reference as part of this Interim Order. No obligation or liability owed, or payment, transfer or grant of security, to the DIP Agent or any DIP Lender under this Interim Order or any DIP Document shall be stayed, restrained, impaired, disgorged, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or be subject to any defense, reduction, setoff, recoupment or counterclaim, whether in the Cases or any other subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceeding if any of the Cases are converted to a case under Chapter 7 of the Bankruptcy Code (collectively, the "<u>Successor Case</u>"). The DIP Obligations, once paid by the Debtors, shall be non-refundable.

(14) <u>Interest, Fees, Costs and Expenses</u>. The DIP Obligations shall bear interest at the rates (including at the default rate specified in the DIP Agreement after the occurrence of an Event of Default (as defined in the DIP Agreement)), and be due and payable (and paid), as set

forth in, and in accordance with the terms and conditions of, this Interim Order and the DIP Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court. The Debtors shall pay all DIP Obligations as and when the same shall become due under the terms of the DIP Documents, in each case whether or not such amounts are included in the Agreed Budget or arose before or after the Petition Date. None of the fees, costs and expenses payable to counsel to the DIP Agent and DIP Lenders shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses) and no recipient of any such payment shall be required to file any interim or final fee application. The Debtors shall indemnify the DIP Agent and the DIP Lenders (and other applicable parties) to the extent set forth in the DIP Documents. Any and all fees, costs and expenses paid prior to the Petition Date by the Debtors to the DIP Agent or DIP Lenders in connection with or with respect to the DIP Facility, DIP Agreement or other DIP Documents are hereby approved in full.

(15) <u>Guarantors; Pledgors</u>. Each Debtor hereby agrees that such Debtor is jointly and severally liable for, and hereby absolutely and unconditionally guarantees to the DIP Agent and the DIP Lenders and their respective successors and assigns, the full and prompt payment when due (whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter) and performance of, all DIP Obligations owed or hereafter owing to the DIP Agent or any DIP Lenders by each other Debtor. Each such Debtor agrees that (a) its guaranty obligation hereunder is a present and continuing guaranty of payment and performance and not of collection, (b) its obligations under this Interim Order and any DIP Document shall not be discharged until the payment and performance, in full, in cash of the DIP Obligations, and the termination of the lending commitments under the DIP Documents, has occurred; and (c) its

guaranty obligations hereunder shall be, and are, absolute and unconditional for all purposes in these Cases and any Successor Case. In no event shall any person or entity who pays (or through the extension of credit to any Debtor, causes to be paid) any of the DIP Obligations be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted in favor of, or conferred upon, the DIP Agent or any DIP Lender by the terms of the DIP Documents or this Interim Order, unless and until such time as all of the DIP Obligations have been indefeasibly paid in full in cash and all lending commitments have been terminated under the DIP Facility.

(16)    _Authorized Signatories_. The signature of any officer of the Debtors appearing on any one or more of the DIP Documents shall be sufficient to bind the respective Debtors and their estates thereto. No board of directors, member, shareholder or other approval or resolutions shall be necessary or required to consummate, effect or validate the transactions contemplated in the DIP Documents or in this Interim Order.

(17)    _Permitted Use_.

(a)    _Generally_. Notwithstanding anything in this Interim Order to the contrary, the Debtors may use the proceeds of the DIP Facility, and incur DIP Obligations, solely in accordance with and pursuant to the financial covenants and other terms and conditions set forth in the DIP Documents and this Interim Order, including, without limitation, pursuant to the Agreed Budget, but in all events only until the occurrence of the Termination Date and regardless of whether the Debtors have expended the entire proceeds of the DIP Facility permitted by the terms of this Interim Order prior to the Termination Date. Notwithstanding the foregoing, if the DIP Agent and the DIP Lenders in their respective sole discretion advance funds or provide other extensions of credit to the Debtors in excess of any financial covenants or other

terms and conditions (or any other limitations in the DIP Documents, including, without limitation, the Agreed Budget), such advances and extensions of credit shall be entitled to, and are hereby granted, the rights, priorities, benefits and protections of this Interim Order; provided that the principal amount of the DIP Obligations shall not exceed $5,000,000 without further order of this Court.

(b)     *No Duty to Monitor Compliance*.  The DIP Agent and the DIP Lenders may assume the Debtors will comply with this Interim Order, the Agreed Budget and the DIP Documents and shall not (i) have any obligation with respect to the Debtors' use of proceeds of the DIP Facility; (ii) be obligated to ensure or monitor the Debtors' compliance with any financial covenants or other terms and conditions of this Interim Order or any DIP Document or (iii) be obligated to pay (directly or indirectly from the DIP Collateral) any expenses incurred or authorized to be incurred pursuant to this Interim Order or any DIP Document or be obligated to ensure or monitor that sufficient proceeds of the DIP Facility exist to pay such expenses.

(18)    DIP Liens.

(a)     *Generally*.  As security for the full and timely repayment of all of the DIP Obligations, the DIP Agent, for the benefit of the DIP Agent and the DIP Lenders, is hereby granted by each Debtor, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, binding, enforceable, unavoidable and fully perfected security interests and liens (collectively, the "DIP Liens") in and upon the DIP Collateral.

(b)     *Other Priority Matters*.  Notwithstanding anything in this Interim Order to the contrary, the DIP Liens shall, subject in each case to the Carve-Out Expenses:

(i)     pursuant to section 364(c)(2) of the Bankruptcy Code, constitute valid, binding, continuing, enforceable, fully-perfected first priority security

interests in and liens on all DIP Collateral that is not otherwise subject to any Permitted Lien,

(ii)      pursuant to section 364(c)(3) of the Bankruptcy Code, constitute valid, binding, continuing, enforceable, fully-perfected junior security interests in and liens on all DIP Collateral that is subject to Permitted Liens (excluding, for the avoidance of doubt, any liens securing the First Lien Loans, the Second Lien Loans and any related obligations; such liens together, the "Prepetition Primed Liens"), which security interests and liens shall be junior to such Permitted Liens; and

(iii)      pursuant to section 364(d)(1) of the Bankruptcy Code, constitute valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interests in and liens (the "Priming Liens") on all DIP Collateral that is subject to any Prepetition Primed Lien, which security interests and liens shall be senior in all respects to the Prepetition Primed Liens.

The DIP Liens shall, as of the Petition Date, be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination (except as expressly provided in this Interim Order), impairment or avoidance, for all purposes in the Cases and any Successor Case, in each case without the necessity of the execution or delivery by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent or any DIP Lenders of any DIP Collateral. Other than as to the Carve-Out Expenses, no other liens or security interests, whether for postpetition financing, adequate protection or otherwise, whether arising pursuant to sections 363 or 364 of the Bankruptcy Code or otherwise, shall be senior or equal to or pari

passu with the DIP Liens in these Cases or any Successor Case without the express written consent of the DIP Agent given in accordance with the DIP Documents (which consent may be withheld in its and the DIP Lenders' sole discretion).

      (19)   <u>Perfection Of DIP Liens</u>.

      (a)   If the DIP Agent hereafter requests that the Debtors execute and deliver to it any financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such party to be reasonably necessary or desirable to further evidence the perfection of the liens and security interests provided under this Interim Order, then the Debtors are hereby authorized and directed, at their sole cost and expense, to promptly execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the DIP Agent is hereby authorized to file or record such documents in their respective discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order, but with the priorities as set forth herein.

      (b)   The DIP Agent may (in its sole discretion), but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any state, county or other jurisdiction in which any Debtor has real or personal property and such filing or recording shall be accepted and shall constitute sufficient evidence of perfection of the DIP Agent's interests in the DIP Collateral at the time and on the date of entry of this Interim Order, but with the priorities as set forth herein.

      (c)   To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the security interests and liens authorized or created under or in connection with this Interim Order or the DIP Documents,

or otherwise would impose filing or registration requirements or fees and charges with respect thereto, such law is hereby pre-empted to the maximum extent permitted by the United States Constitution, the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court; provided that the DIP Agent may still take such steps as it deems advisable to perfect its security interests and liens under otherwise applicable state law without waiving the benefits of this provision of this Interim Order.

(d)     Except as otherwise expressly provided herein, notwithstanding anything to the contrary contained in any prepetition or postpetition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated or bound, any provision therein that restricts, conditions, prohibits, limits or impairs in any way any Debtor from granting the DIP Agent and DIP Lenders the postpetition claims, security interests or liens upon any of its assets, properties or other DIP Collateral or otherwise entering into and complying with all of the terms, conditions and provisions of this Interim Order and DIP Documents shall be unenforceable against such Debtor, and therefore, shall not adversely affect the validity, priority, perfection or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to such parties pursuant to this Interim Order and DIP Documents.

(20)     Super-Priority Claims.  In addition to the DIP Liens, the DIP Agent and DIP Lenders are hereby granted, for all DIP Obligations, an allowed super-priority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code (the "DIP Lenders' Superpriority Claims") against each Debtor and its respective estate.  Except for the Carve-Out Expenses, the DIP Lenders' Superpriority Claims shall have priority over all other costs and expenses of administration of any kind (and no cost or expense of administration shall be senior

to, equal to, or pari passu with, the DIP Lenders' Superpriority Claims), including those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 363, 364, 503, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise, in each case whether incurred in these Cases or any Successor Case, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise, including, without limitation, the First Lien Lenders' Superpriority Claims and the Second Lien Lenders' Superpriority Claims, and whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. The DIP Lenders' Superpriority Claims shall be deemed legal, valid, binding, and enforceable claims and expenses against the Debtor and their estates, and not subject to subordination (except as expressly provided in this Interim Order), impairment or avoidance, for all purposes in the Cases and any Successor Case. The DIP Lenders' Superpriority Claims shall be payable from, and have recourse to, any and all property and assets of each Debtor, subject to the Carve-Out Expenses. Except for the Carve-Out Expenses, no claims having an administrative priority senior to or pari passu with the Super-Priority Claim shall be granted while any portion of the DIP Obligations remain outstanding, absent express written consent of the DIP Agent given in accordance with the DIP Documents (which consent may be withheld in its and the DIP Lenders' sole discretion).

(21)     Modification of Automatic Stay.

(a)     Except as otherwise provided in this Interim Order (x) the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby vacated as to the DIP Agent and DIP Lenders to permit such parties to perform the actions described in or permitted by this Interim Order, in each case without further notice, application or motion to, or order from the Court, and (y) neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code

or applicable law shall be utilized to prohibit such party's exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable). Consistent with the foregoing sentence, the DIP Agent and DIP Lenders are hereby granted leave to (i) receive and apply payments of the DIP Obligations and proceeds of the DIP Collateral, as applicable, (ii) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral provided by this Interim Order, (iii) charge and collect any interest (including at the default rate to the extent authorized herein), fees, costs and other expenses accruing at any time under this Interim Order or the DIP Documents and to the extent authorized herein, (iv) give the Debtors any notice provided for in this Interim Order or the DIP Documents and (v) upon the Termination Date, but subject to the last sentence of this paragraph, and in each case without further notice, motion or application to, order of, or hearing before, this Court: (A) terminate the DIP Agreement and/or the other DIP Documents, (B) accelerate any or all of the DIP Obligations and declare such DIP Obligations immediately due and payable in cash, and/or (C) revoke the Debtor's right, if any, to use the DIP Collateral and proceeds of the DIP Collateral on the consensual terms and conditions described in this Interim Order and/or proceeds of the DIP Facility. Notwithstanding anything to the contrary contained in this Interim Order, the Debtors reserve all rights to seek authorization to use the DIP Collateral of the DIP Agent and DIP Lenders on a non-consensual basis on and after the Termination Date upon notice and hearing, and the DIP Agent and DIP Lenders reserve all rights to object to, and contest, such authorization.

(b)     Upon the Termination Date, and after obtaining relief from this Court from the automatic stay upon hearing and five (5) business days prior notice to respective counsel to the

Debtors, Creditors' Committee, First Lien Agent, Second Lien Agent and U.S. Trustee, the DIP Agent and DIP Lenders shall be entitled to foreclose or otherwise enforce the DIP Liens on any or all of the DIP Collateral and/or to exercise any other default-related remedies under the DIP Documents, this Interim Order or applicable law in seeking to recover payment of the DIP Obligations. In addition to the Debtors' rights to seek authorization to use the DIP Collateral of the DIP Agent and DIP Lenders on a non-consensual basis on and after the Termination Date upon notice and hearing, and the reservation of all rights of the DIP Agent and DIP Lenders to object to, and contest, such authorization as described above, ~Subject to the entry of the~ the parties acknowledge and agree ~Final Order~ that the only other issue to be determined and decided at such Court hearing is whether the Termination Date has occurred and is continuing.

(22)     <u>No Liability to Third Parties</u>.  Subject to entry of the Final Order, in making decisions to advance loans to the Debtors, in administering any loans, in approving any budget or in taking any actions permitted by this Interim Order or the DIP Documents, as applicable, the DIP Agent and the DIP Lenders shall not (i) be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 <u>et seq.</u> as amended, or any similar federal or state statute), and/or (ii) owe any fiduciary duty to any Debtor, its respective creditors or its respective estate, and their relationship with each Debtor shall not constitute or be deemed to constitute a joint venture or partnership with such Debtor.

## General Provisions

(23)   <u>Certain Restricted Payments</u>.  Except to the extent approved in writing by the First Lien Agent and the DIP Agent, none of the Debtors shall pay from the Cash Collateral, from the proceeds of the DIP Facility or otherwise any administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code or any pre-petition unsecured claims (including pre-petition priority unsecured claims), in each case whether pursuant to section 105, 363, 365 or any other provision of the Bankruptcy Code or otherwise, other than as provided in an order entered in connection with the motions filed on the Petition Date authorizing the Debtors to pay certain prepetition claims, such order being reasonably satisfactory in form and substance to the DIP Agent and the First Lien Agent.

(24)   <u>No Lien Alteration</u>.  The receipt by the Debtors of any proceeds of DIP Collateral shall not, and shall not be deemed to, affect, alter or otherwise modify the validity, priority or perfection of any liens in and/or claims against such proceeds and such liens and claims shall continue to exist in and against such proceeds in the possession of the Debtors, in each case with the same validity, priority and perfection as existed immediately prior to such receipt by the Debtors.

(25)   <u>Reservation of Rights</u>.  Payment of any Carve-Out Expenses shall not, and shall not be deemed to, (i) reduce any Debtor's obligations owed to any of the DIP Lenders, Pre-Petition Lenders or their respective agents or (ii) modify, alter or otherwise affect any of the liens and security interests of such parties in the DIP Collateral (or their respective claims against the Debtors).  None of the DIP Lenders, Pre-Petition Lenders or their respective agents shall be responsible for the direct payment or reimbursement of any fees or disbursements of any professionals of the Debtors or the Creditors Committee (or of any other Person) incurred in

connection with the Cases or any Successor Case, and nothing in this Interim Order or otherwise shall be construed to obligate such parties in any way to pay compensation to or to reimburse expenses of any professional retained in these Cases pursuant to section 327 or 1103 of the Bankruptcy Code or any other Person. Nothing herein shall impair, or be construed to impair, the ability of any party to (i) object to any of the fees, expenses, reimbursement or compensation of the professionals retained in these Cases pursuant to section 327 or 1103 of the Bankruptcy Code or (ii) dispute the validity, priority, enforceability and perfection of the Permitted Liens.

(26)     The Intercreditor Agreement. _Nothing in this Interim Order shall affect the terms or enforceability of_ The Intercreditor Agreement ~~shall remain in full force and effect and enforceable pursuant to section 510(a) of the Bankruptcy Code~~.

(27)     Effect of Stipulations on Third Parties. (a) Subject to the reservations of rights set forth in this paragraph, the Debtors' stipulations, admissions, and waivers contained in paragraph H of this Interim Order concerning the First Lien Lenders, shall be binding upon the Debtors and their successors and assigns in all circumstances. Notwithstanding anything herein to the contrary, for a period equal to the lesser of (a) _Seventy-five (75)_ ~~sixty (60)~~ days after the Petition Date or (b) the date of the confirmation of any plan of reorganization or liquidation in these Cases, the Creditors' Committee and any other party in interest with requisite standing shall be entitled to investigate the validity, perfection and enforceability of the First Lien Agent's liens and security interests held on behalf of itself and the First Lien Lenders and the obligations arising under the First Lien Loan Documents, or to assert any other claims or causes of action against the First Lien Agent and First Lien Lenders (the "First Lien Investigation Termination Date"). If the Creditors' Committee or any other party in interest with requisite standing determines that there may be a challenge to the liens or claims of the First Lien Lenders by the First Lien Investigation Termination Date, the Creditors' Committee and any other party in interest with requisite

standing shall be permitted to file and prosecute an adversary proceeding related thereto, and shall have only until the First Lien Investigation Termination Date to file such adversary proceeding on behalf of the Debtors' estates setting forth the basis of any such challenge, claim or cause of action. If such action is not filed on or before the First Lien Investigation Termination Date (or such other later date as extended by the written consent of the Debtors and the First Lien Agent), the stipulations, admissions, and waivers contained in paragraph H of this Interim Order, and any consideration granted as adequate protection for the First Lien Lenders in this Interim Order, shall be irrevocably binding on the Creditors' Committee and all parties in interest in these Cases without further action by any party or this Court; provided further that any stipulations, admissions, and waivers contained in paragraph H of this Interim Order which are not specifically challenged in any such action, subject to the right to amend under applicable law, shall nonetheless be binding and preclusive despite the initiation of an action challenging other stipulations, admissions, and waivers. During the period from the initiation of any such adversary proceeding by the Creditors Committee or any other party in interest with requisite standing challenging the liens or claims of the First Lien Lenders through and until the entry of a final, non-appealable order in favor of the Creditors Committee or any other party in interest with requisite standing sustaining its challenge in such timely filed adversary proceeding, the stipulations, admissions, and waivers of the Debtors provided herein, and the relief afforded the First Lien Lenders herein, shall continue to be binding and effective. Unless the First Lien Agent, the Required First Lien Lenders and the Debtors each consents in writing to an extension or as otherwise ordered by the Court, the First Lien Investigation Termination Date may not be extended.

(b)     Subject to the reservations of rights set forth in this paragraph, the Debtors' stipulations, admissions, and waivers contained in paragraph I of this Interim Order concerning the Second Lien Lenders shall be binding upon the Debtors and their successors and assigns in all circumstances for a period equal to the lesser of (a) ~~sixty (60)~~ Seventy-five (75) days after the Petition Date or (b) the date of confirmation of any plan of reorganization or liquidation in these Cases, the Creditors' Committee and each other party in interest with requisite standing shall be entitled to investigate the validity, perfection and enforceability of the Second Lien Lenders' liens and security interests arising under the Second Lien Lenders Loan Documents, or to assert any other claims or causes of action against the Second Lien Lenders (the "Second Lien Investigation Termination Date"). If the Creditors' Committee or any other party in interest with requisite standing determines that there may be a challenge to the Second Lien Lenders' pre-petition obligations by the Second Lien Investigation Termination Date, the Creditors' Committee or any other party in interest with requisite standing shall be permitted to file and prosecute an adversary proceeding related thereto, and shall have only until the Second Lien Investigation Termination Date to file such adversary proceeding on behalf of the Debtors' estates setting forth the basis of any such challenge, claim or cause of action. If such action is not filed on or before the Second Lien Investigation Termination Date (or such other later date as extended by the written consent of the Debtors and the Second Lien Lenders), the stipulations, admissions, and waivers contained in paragraph I of this Interim Order and any consideration granted as adequate protection for Second Lien Lenders in this Interim Order, shall be irrevocably binding on the Creditors' Committee and all parties in interest in these Cases without further action by any party or this Court; provided further, that any stipulations, admissions, and waivers contained in paragraph I of this Interim Order which are not specifically challenged in any such action,

subject to the right to amend under applicable law, shall nonetheless be binding and preclusive despite the initiation of an action challenging other stipulations, admissions, and waivers. During the period from the initiation of any such adversary proceeding by the Creditors Committee or any other party in interest with requisite standing challenging the liens or claims of the Second Lien Lenders through and until the entry of a final, non-appealable order in favor of the Creditors Committee sustaining its challenge in such timely filed adversary proceeding, the stipulations, admissions, and waivers of the Debtors provided herein, and the relief afforded the Second Lien Lenders herein, shall continue to be binding and effective. Unless the holders of more than fifty percent (50%) of the outstanding Second Lien Obligations and the Debtors each consent in writing to an extension or as otherwise ordered by the Court, the Second Lien Investigation Termination Date may not be extended.

(c) Notwithstanding anything herein to the contrary, nothing herein shall preclude the Debtors from settling the liens or claims of the First Lien Lenders or the Second Lien Lenders pursuant to a plan or reorganization or otherwise in accordance with the Bankruptcy Code.

(28) <u>Limitation Upon Additional Surcharges</u>. In consideration of the treatment and priority afforded the Carve-Out Expenses hereunder, subject to entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the Agreed Budget) by any Debtor or any other person or entity shall be imposed or charged against any or all of the First Lien Agent, the First Lien Lenders, the DIP Agent or the DIP Lenders, their respective claims, or their respective collateral under section 506(c) of the Bankruptcy Code or otherwise, and the Debtors, on behalf of their estates, waive any such rights. It is expressly understood by all parties that in making all such undertakings and proceeding in compliance with this Interim Order, each of the

DIP Agent, the DIP Lenders, the First Lien Agent, and the First Lien Lenders has relied on the foregoing provisions of this paragraph. Notwithstanding any approval of or consent to an Agreed Budget, nothing in this Interim Order shall constitute or be deemed to constitute the consent by the DIP Agent, the DIP Lenders, the First Lien Agent, or the First Lien Lenders, to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the Agreed Budget) against such party, its claims or its collateral under section 506(c) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

(29) <u>Successors and Assigns</u>. The provisions of this Interim Order shall be binding upon the DIP Agent, the DIP Lenders, the First Lien Agent, First Lien Lenders, the Second Lien Agent, and the Second Lien Lenders (collectively, the "<u>Lender Parties</u>"), the Debtors and their respective successors and assigns, including any trustee appointed in these Cases, and shall inure to the benefit of the Lender Parties, the Debtors and their respective successors and assigns.

(30) <u>Subsequent Reversal or Modification</u>. Based on the findings set forth in this Interim Order, in consideration for the financing provided under the DIP Facility and the consent to the priority of the DIP Facility and to use of Cash Collateral, the Lender Parties are entitled to, and hereby are granted, the full rights, benefits, privileges and protections of, and provided by, section 364(e) of the Bankruptcy Code with respect to the DIP Obligations (and related DIP Liens, DIP Lenders' Superpriority Claims and other rights, remedies and benefits), the Senior Replacement Liens, the Junior Replacement Liens, the First Lien Lenders' Superpriority Claims and the Second Lien Lenders' Superpriority Claims, in each case created or authorized by this Interim Order in the event that this Interim Order or any authorization or approval contained herein is subsequently stayed, vacated, reversed, amended or modified on appeal. If any or all of

the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, or if any order shall be entered by the Court converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing or closing any of the Cases or otherwise, such action will not affect the validity and enforceability of any lien, claim, superpriority or other protection authorized or created hereby in favor of any of the Lender Parties. Notwithstanding any such reversal, stay, modification, vacatur or additional order, any lien, security interest, and superpriority claim granted by the Debtors in accordance with this Interim Order prior to the date thereof shall be governed in all respects by the original provisions of this Interim Order, and the Lender Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code and granted herein with respect to all such indebtedness, obligations, liabilities, liens, security interests, and superpriority claims. The claims, liens, and security interests granted to the DIP Agent and DIP Lenders pursuant to this Interim Order shall maintain their priority, validity and perfection as provided by this Interim Order until all of the DIP Obligations are indefeasibly paid in full in cash and discharged in accordance with the respective terms and conditions of this Interim Order and the DIP Documents.

(31)     No Implied Waiver.  The failure, at any time or times hereafter, of any Lender Party or Lender Parties to require strict performance by the Debtors of any applicable provision of this Interim Order (or, in the case of the DIP Agent and DIP Lenders, the DIP Documents) shall not waive, affect or diminish any right of such parties thereafter to demand strict compliance and performance therewith. No delay on the part of any party in the exercise of any right or remedy under this Interim Order or the DIP Documents shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy. None of the rights or remedies of any party under this Interim Order or the DIP Documents shall be

deemed to have been amended, modified, suspended or waived unless such amendment, modification, suspension or waiver is in writing and signed by the party against whom such amendment, modification, suspension or waiver is sought. None of the DIP Agent or the DIP Lenders waives, and each expressly reserves, any and all claims, causes of action, defenses, rights and remedies it has or may have pursuant to any or all of the DIP Documents, the Bankruptcy Code and/or under applicable law against or with respect to any Debtor and any other person or entity. Except as expressly provided in this Interim Order, the obligations of the Debtors, and the rights, remedies, and priorities of the DIP Agent and the DIP Lenders arising under or in connection with this Interim Order, are in addition to, and are not intended as a waiver or substitution for, those granted to, or contained in favor of, such parties under any or all of the DIP Documents, the Bankruptcy Code and/or under applicable law. This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Pre-Petition Lenders may have to bring or be heard on any matter brought before this Court.

(33) <u>Interim Order Governs</u>. In the event of any conflict between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall control and govern to the extent of such conflict.

(35) <u>Final Hearing</u>. The Final Hearing on the Motion is scheduled for July 27, 2009 at 2 p.m., before this Court. If no objections to the relief sought in the Motion with respect to the Final Order are filed and served in accordance with this Interim Order, a separate Final Order may be presented by the Debtors and entered by the Court.

(36) <u>Adequate Notice</u>. The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court. Under the circumstances, no further notice of the request for the relief granted at the

Interim Hearing is required. The Debtors shall promptly mail copies of this Interim Order and notice of the Final Hearing to the Notice Parties. Any objection to the relief to be sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be actually received no later than 4 p.m. (eastern time) five business days prior to the Final Hearing by the following: (i) the U.S. Trustee, (ii) counsel to the Debtors, (iii) counsel to the DIP Agent, (iv) counsel to the First Lien Agent, and (v) ~~counsel to the Second Lien Agent.~~ Counsel to the Informal Group of Second Lien Lenders

Dated: Wilmington, Delaware
      July 9, 2009

                              _____
                              BRENDAN L. SHANNON
                              UNITED STATES BANKRUPTCY JUDGE