IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
In re                                : Chapter 11
                                     :
CCS Medical, Inc., *et al.*,         : Case No. 09-12390 (CCS)
                                     :
                                     :
                                     :
                                     : Jointly Administered
           Debtors.[1]               :
                                     :
---------------------------------------------------------x

# DEBTORS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO THE SECOND LIEN LENDERS

Pursuant to Federal Rules of Bankruptcy Procedure 7026, 7034, and 9014 and Federal Rules of Civil Procedure 26 and 34, CCS Medical, Inc. and each of the other debtors and debtors in possession in the above-captioned cases (collectively, "CCS" or the "Debtors"), hereby request that the Second Lien Lenders, as the term is defined below, answer and produce documents in response to the document requests stated below by noon on Tuesday, August 18, 2009, at the offices of Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801. The document requests are made in order that the Debtors may respond to the Motion of the so-called "Second Lien Group" for an Order Appointing an Official Committee of Second Lien Lenders (the "Motion").

---

[1] If applicable, the last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) CCS Acquisition Holding-Sub Corporation (6272); (ii) CCS Medical Holdings, Inc. (6268); (iii) CCS Medical, Inc. (6264); (iv) CCS Star, LLC (N/A); (v) Chronic Care Solutions, Inc. (7604); (vi) DEGC Enterprises (U.S.), Inc. (1823); (vii) KeyMed, Inc. (1442); (viii) Medical Express Depot, Inc. (3507); (ix) Medical Holdings, Inc. (2975); (x) Medship Direct, Inc. (6328); (xi) MedStar Diabetic Supply, LP (5060); (xii) MP TotalCare, Inc. (6364); (xiii) MP TotalCare Medical, Inc. (7392); (xiv) MP TotalCare Services, Inc. (4513); (xv) MP TotalCare Supply, Inc. (2983); (xvi) MPTC Holdings, Inc. (1467); (xvii) Sanvita, Inc. (1766); (xviii) Secure Care Medical, Inc. (0803); (xix) TotalCare Wholesale, Inc. (1760). The Debtors' executive headquarters are located at 14255 49th Street North, Suite 301, Clearwater, FL 33762.

# DEFINITIONS

Notwithstanding any definition below, each word, term, or phrase used in these Document Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure.

1. The terms "and" and "or" as used herein mean "and/or" and shall be construed both conjunctively and disjunctively, as necessary, to make the Requests as inclusive as possible.

2. "Document," "communication," or "written communication" as used herein means writings and data compilations and any tangible thing on or in which words or data are preserved by any means or in any form, including, without limitation, correspondence, letters, envelopes, telegrams, telexes, minutes, notes or memoranda of personal or telephone conversations or conferences, telephone logs, memoranda, handwritten or stenographic notes, electronic mail, diaries, calendars, contracts, purchase orders, invoices, accounts, ledgers, evaluations, analyses, forecasts, statistics, estimates, reviews, working papers, books, magazines, newspapers, booklets, brochures, catalogs, pamphlets, instructions, circulars, bulletins, trade letters, press releases, charts, maps, diagrams, designs, specifications, blueprints, sketches, drawings, pictures, photographs, motion pictures, video or audio tapes, belts or disks, voice recordings, transcripts or transcriptions, computer printouts, magnetically encoded cards or tapes, microfilms, microfiches, and any other data compilations from which words, numbers, images or other information can be obtained, and shall include all drafts and non-identical copies of such documents. "Documents" include not only paper records but any of the foregoing items or writings which may be recorded or stored in any form of electronic media (translated, if necessary, to appropriate devices in reasonably usable form), including but not limited to CD

ROMS, floppy disks, computer hard drives, magnetic tape, or optical disks. In the case of multiple non-identical drafts or versions of a document, each non-identical draft or version, including red-lined or compared copies of documents, is a separate document.

3. When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

4. "Discussion" refers to any transmission or exchange of information between two or more persons, orally or in writing, and includes, without limitation, any conversation or communication, whether face-to-face or by means of telephone, telegraph, telex, telecopier, facsimile, e-mail, or another medium.

5. "Concerning," "referring," "relating" or "regarding" as used herein means providing evidence of, reflecting, recording, disclosing, memorializing, analyzing, reporting, communicating, showing, illustrating, or discussing.

6. The term "including" means "including, but not limited to."

7. The terms "all," "any," "each," and "every" shall each be construed as all, any, each and every to bring within the scope of the request or requests all information that might otherwise be construed to be outside of its scope.

8. "Person(s)" as used herein means a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

9. Capitalized terms used herein that are not defined shall have the meanings ascribed to such terms in the Disclosure Statement.

10. "CCS" as used herein refers to CCS Medical, Inc. and each of the other debtors and debtors in possession in the above-captioned cases.

11. The term "Second Lien Lender(s)" means any person who is or was a holder of any of the outstanding obligations under the Second Lien Credit Agreement, dated September 30, 2005, and, where applicable, its officers, directors, employees, partners, parents, subsidiaries, affiliates, agents, attorneys, accountants, representatives, or other persons acting, or who have acted, on its behalf, including the agents under Second Lien Credit Agreement.

12. The term "you" and "your" as used herein refer to the Second Lien Lender(s).

13. "Broadpoint Gleacher" means Broadpoint Gleacher Securities Group, Inc., financial advisors to the Second Lien Lenders, and where applicable, its officers, directors, employees, consultants, agents, representatives, investigators, researchers, advisors, accountants and attorneys.

14. "Bracewell & Giuliani" means Bracewell & Giuliani LLP, legal advisors to the Second Lien Lenders, and where applicable, its officers, directors, employees, consultants, agents, representatives, investigators, researchers, advisors, accountants and attorneys.

15. All other terms used in these requests have the meaning given by the Bankruptcy Code or by common usage unless otherwise required by the context.

## INSTRUCTIONS

1. These Requests require you to produce all documents that are in your actual or constructive possession, custody, or control, including but not limited to documents in the possession, custody, or control of your present or former officers, directors, employees, agents, accountants, attorneys, consultants, representatives or any persons acting or purporting to act on your behalf, any persons consulted concerning any factual matters or matters of opinion relating to any of the facts or issues involved in this case, and including documents maintained

by or on behalf of any predecessor(s) in interest.  You are not required to produce documents that the Debtors have provided to you since the commencement of this chapter 11 proceeding.

2. These Requests are continuing in nature and require further and supplemental production as and whenever the Second Lien Lenders acquire or locate additional documents between the time of the initial production under these Requests and the time of the trial in this action.

3. Each Request requires the production of all responsive documents in their entirety, including all pages and attachments without redaction.

4. If you cannot respond to a Request in full, you shall respond to the extent possible, produce all documents in your possession, custody, or control that are responsive, and specify the reason for your inability to respond to the Request in its entirety.

5. If you contend that a particular Definition, Instruction, or Request is ambiguous, such claim shall not provide a basis for refusing to respond.  You are instructed to set forth the allegedly ambiguous language and to set forth the interpretation of that language that you have adopted in responding to the Request in question.

6. If your response to a particular Request is a statement that you lack the ability to comply fully with that Request, you must affirm in your response that a diligent search and a reasonable inquiry has been made in an effort to comply with that demand.  This statement shall also specify the reason that you are unable to comply with the Request.  For each document responsive to a Request that has been lost, misplaced, discarded, destroyed, has never been or is no longer in your possession, custody or control, you must identify the document and identify any person who has any knowledge concerning the document's disposal or release.

7. For each document responsive to a Request that is withheld by reason of a claim of privilege or work product protection, a list is to be furnished identifying each document for which the privilege is claimed together with the following information: (a) the date of the document; (b) the author(s) of the document, including the job title of each author; (c) the name of each person to whom you provided the document, including the job title of each such recipient; (d) a brief description of the document, including the title or re line, number of pages, and the subject matter described with sufficient detail to accurately identify the basis for withholding the document; (e) a statement of the basis for the claim of privilege; and (f) the numbered Request(s) to which the document is responsive.

8. For each document responsive to a Request that is withheld on grounds other than privilege or work product protection, the reasons for non-production must be stated with specificity as to all grounds.

9. If you otherwise object to any part of any Request, the reasons for the objection must be stated with specificity as to all grounds.

10. These Requests require the production of documents as they are kept in the ordinary course of business or as organized and labeled to correspond with the particular Requests set forth below.

11. Unless otherwise indicated, the applicable time period covered by these Requests is January 1, 2008 through the present time.

12. The Debtors reserve their right to serve supplemental and additional document requests.

# REQUESTS FOR THE PRODUCTION OF DOCUMENTS

1. Documents concerning the statement in paragraph 33 of the Motion that the "Second Lien Group disputes the Debtors' enterprise valuation, which, according to the Debtors' disclosure statement, ranges between $230 and $286 million."

2. Documents concerning the statement in paragraph 33 of the Motion that "Without an agent in place, and without an official committee of Second Lien Lenders, the Second Lien Lenders are not being adequately represented in these cases."

3. Documents concerning the statement in paragraph 41 of the Motion that "the Second Lien Group, currently, only includes approximately 55% of the claims under the Second Lien Credit Agreement, and their efforts will benefit a larger class of creditors."

4. Documents concerning the statement in paragraph 42 of the Motion that "the Second Lien Group is composed of sophisticated investors who have in fact engaged professionals in connection with these cases."

5. Documents concerning the statement in paragraph 46 of the Motion that "other unsecured PIK note claims . . . are also held by certain members of the Second Lien Group."

6. Documents concerning the reference in paragraph 47 of the Motion to the Second Lien Lenders' refusal to "waive all liens that they have as a condition to participation on an official unsecured creditors' committee."

7. Documents concerning the statement in paragraph 48 of the Motion that "The Second Lien Group consists of four (4) creditors with substantial and eligible deficiency and PIK note claims."

8. Documents concerning communications between and among the Second Lien Lenders regarding CCS.

9. Documents concerning communications between the Second Lien Lenders and any third parties regarding CCS.

10. Documents concerning the engagement or retention by the Second Lien Lenders of Broadpoint Gleacher, Bracewell & Giuliani, and any other financial or legal advisors with respect to CCS.

11. Documents concerning valuation or financial analyses of CCS prepared by Broadpoint Gleacher or by any other financial advisors that were retained, engaged, or consulted by the Second Lien Lenders.

12. Documents concerning communications between the Second Lien Lenders and any third parties regarding the purchase or sale of CCS or any assets of CCS.

Dated: Wilmington, Delaware
August 16, 2009

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Matthew B. Lunn
Robert S. Brady (No. 2847)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Counsel for Debtors and Debtors-in-Possession