IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re                                          :   Chapter 11
                                               :
CCS Medical, Inc., et al.,                     :   Case No. 09-12390 (CSS)
                                               :
                                               :   Jointly Administered
                   Debtors.                    :
---------------------------------------------------------------- x

# AMENDMENT TO SCHEDULES OF ASSETS AND LIABILITIES

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Co-Counsel for the Debtors and
Debtors in Possession*

*These amended notes (the "<u>Amended Global Notes</u>") regarding the Debtors' Schedules of Assets and Liabilities (the "<u>Schedules</u>") and Statements of Financial Affairs (the "<u>SOFAs</u>") comprise an integral part of the Schedules and SOFAs and should be referred to and considered in connection with any review of them.*

1. The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>") prepared these unaudited Schedules pursuant to section 521 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 1007 of the Federal Rules of Bankruptcy Procedure. Except where otherwise noted (a) the information provided herein is as of the close of business on July 7, 2009, and (b) values of assets provided represent book values as of such date, which do not necessarily represent market value. While the Debtors have made every reasonable effort to ensure that the Debtors' Schedules and SOFAs are accurate and complete, based upon information that was available to them at the time of preparation, inadvertent errors or omissions may exist and the subsequent receipt of information and/or further review and analysis of the Debtors' books and records may result in changes to financial data and other information contained in the Schedules and SOFAs. Moreover, because the Schedules and SOFAs contain unaudited information which is subject to further review and potential adjustment, there can be no assurance that these Schedules and SOFAs are complete or accurate.

2. On August 25, 2009, the Debtors filed amendments and/or supplements to the Schedules and SOFAs (the "<u>Amendments</u>"). The Amendments comprise an integral part of the Schedules and SOFAs and should be referred to and considered in connection with any review of them. The Amendments are fully incorporated into the Schedules and SOFAs, as applicable, and these Amended Global Notes comprise an integral part of the Amendments and should be referred to and considered in connection with any review of them.

3. In reviewing and signing the Schedules and SOFAs, the Debtors' Chief Financial Officer (the "<u>CFO</u>") has necessarily relied upon the efforts, statements and representations of other personnel and professionals of the Debtors. The CFO has not (and could not have) personally verified the accuracy of each such statement and representation, including statements and representations concerning amounts owed to creditors and their addresses.

4. The Debtors reserve the right to amend the Schedules and SOFAs as may be necessary or appropriate, including, but not limited to, the right to assert offsets or defenses to (which rights are expressly preserved), or to dispute, any claim reflected on the Schedules as to amount, liability or classification, or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated." Furthermore, nothing contained in the Schedules shall constitute a waiver of the Debtors' rights with respect to these chapter 11 cases and specifically with respect to any issues involving substantive consolidation, equitable subordination and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws to recover assets or avoid transfers.

5. Any failure to designate a claim listed on the Debtors' Schedules as "disputed," "contingent" or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent" or "unliquidated." Additionally, the dollar amounts of claims listed

*These Amended Global Notes regarding the Debtors' Schedules and SOFAs comprise an integral part of the Schedules and SOFAs and should be referred to and considered in connection with any review of them.*

    may be exclusive of contingent and additional unliquidated amounts. Further, the claims of individual creditors for, among other things, goods, services or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits or allowances due from such creditors to the Debtors or setoffs applied by such creditors against amounts due by such creditors to the Debtors with respect to other transactions between them. The Debtors reserve all of their rights with respect to any such credits and allowances.

6. Some of the Debtors' scheduled assets and liabilities are unknown and/or unliquidated at this time. In such cases, the amounts are listed as "unknown." Accordingly, the Schedules may not accurately reflect the aggregate amount of the Debtors' current assets and liabilities.

7. At times, the preparation of the Schedules and the SOFAs required the Debtors to make estimates and assumptions that affect the reported amounts of assets and liabilities, the disclosures of contingent assets and liabilities and the reported amounts of expenses during the reporting period. Actual results could differ from those estimates. Pursuant to Fed. R. Bankr. P. 1009 and Del. Bankr. L.R. 1009-2, the Debtors may amend their Schedules as they deem necessary and appropriate to reflect material changes, if any, that arise during the pendency of their chapter 11 cases. In addition, the Debtors reserve the right to dispute or to assert offsets or defenses to any claim listed on the Schedules.

8. Given the differences between the information requested in the Schedules and the financial information utilized under generally accepted accounting principles in the United States ("GAAP"), the aggregate asset values and claim amounts set forth in the Schedules do not necessarily reflect the amounts that would be set forth in a balance sheet prepared in accordance with GAAP.

9. For the purposes of the Schedules, the bank account balances listed on each of the Debtors' Schedule B are net of outstanding checks that have been issued by the Debtors but not yet cashed by the check's recipient. Accordingly, certain bank accounts have negative balances because uncashed checks remain against an account that is either (a) closed, or (b) a zero balance account that is swept to a $0.00 bank balance at the end of each day, thus resulting in a negative book balance. Some, but not all, of these uncashed checks may be honored in the ordinary course pursuant to various orders entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in these Chapter 11 Cases.

10. For the purposes of Schedule B, each Debtor's Schedule identifies such Debtor's direct ownership interests in any subsidiary or partnership, but excludes any indirect ownership of a subsidiary or partnership.

11. For the purposes of the Schedules, intercompany claims have not been listed thereon, as in the aggregate they balance out to zero. More information regarding intercompany claims will be provided to the United States Trustee upon reasonable request.

12. For the purposes of Schedule B, question 16, the gross value of accounts receivable has been presented, net of allowances, if any, made by such Debtor for doubtful accounts.

*These Amended Global Notes regarding the Debtors' Schedules and SOFAs comprise an integral part of the Schedules and SOFAs and should be referred to and considered in connection with any review of them.*

13. For the purposes of Schedule B, question 21, certain Debtors may be entitled to a tax refund with respect to "Use Taxes." However, certain taxing authorities do not remit such sums, but rather use them to offset future amounts due. Further, certain of the amounts listed on Schedule B, question 21, reflect tax refunds that are liquidated, but remain contingent on approval of the applicable state taxing authority.

14. For the purposes of Schedule B, question 21, the Debtors, despite their efforts, may not have listed all of their causes of action against third parties as assets in the Schedules and SOFAs. The Debtors reserve all of their rights with respect to any causes of action they may have, whether or not listed as assets in the Schedules and SOFAs, and neither these Amended Global Notes nor the Schedules and SOFAs shall be deemed a waiver of any such causes of action.

15. For the purposes of Schedule B, question 22 with respect to Sanvita, Inc., the Debtors have learned since the preparation of their Schedules and SOFAs that the "VMPC Patent" is a nonexclusive, nontransferable license to claims 1-23 and 33-55 under United States Patent No. 5,536,249 owned by Becton Dickinson and Company.

16. For the purposes of Schedule D, the amount of the claims listed thereon reflect principal only, and not interest, fees or other expenses. Such amounts are subject to allowance pursuant to section 506 of the Bankruptcy Code. The amount listed for the First Lien Credit Agreement, dated as of September 30, 2005, among CCS Acquisition Holding-Sub Corporation, CCS Medical, Inc., as Borrower, and the Lenders party thereto, includes amounts due under that certain Master Agreement, Dated as of September 28, 2005, among Wachovia Bank, National Association and CCS Medical, Inc. and that certain Master Agreement, Dated as of October 6, 2005, among JPMorgan Chase Bank, N.A. and CCS Medical Inc.

17. Pursuant to orders of the Bankruptcy Court dated July 9, 2009, the Debtors were authorized to pay and have paid certain prepetition obligations. Therefore, certain claims otherwise entitled to priority under section 507 of the Bankruptcy Code have been satisfied in the ordinary course and such claims have not been listed on the Debtors' Schedule E. Further, the Debtors believe that certain claims currently listed on Schedules E and F have been or will be satisfied in the ordinary course of business pursuant to such orders, and the Debtors reserve all rights to dispute, object to, or otherwise contest any such amounts scheduled.

18. For the purposes of the Schedules, those entries described as "Uncashed Checks" refer to checks issued by the Debtors that had not been negotiated by intended recipients as of the Petition Date. It is not readily ascertainable by the Debtors whether replacement checks have been issued on account of such checks and, accordingly, certain of such amounts listed in the Schedules may have since been satisfied. Further, under various state escheatment laws, the Debtors may be required to turn over amounts to applicable state agencies if a check is not cashed within a statutorily defined period of time. It is not readily ascertainable by the Debtors at this time what, if any, amounts may be owed now or in the future to such state agencies. Accordingly, the agencies have not been listed on Schedule F.

*These Amended Global Notes regarding the Debtors' Schedules and SOFAs comprise an integral part of the Schedules and SOFAs and should be referred to and considered in connection with any review of them.*

19. For the purposes of the Schedules, the Debtors have only scheduled claims and executory contracts for which the Debtors may be contractually and/or directly liable. No claims have been scheduled for a Debtor that may have benefited directly or indirectly from a contractual relationship to which the Debtor was not a named party. No claims or executory contracts have been scheduled where payments to third parties were made on another Debtors' behalf for administrative convenience or as a result of the Debtor's cash management system.

20. The Debtors hereby reserve all of their rights to dispute the validity, status or enforceability of any contract, agreement, or lease set forth on Schedule G that may have expired or may have been modified, amended, and supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters and other documents, instruments, and agreements which may not be listed on Schedule G. Certain of the leases and contracts listed on Schedule G may contain certain renewal options, guarantees of payment, options to purchase, rights of first refusal, and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth on Schedule G. Certain of the executory agreements may not have been memorialized in writing and could be subject to dispute. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as easements, right of way, subordination, non-disturbance and attornment agreements, supplemental agreements, amendments/letter agreements, title agreements and confidentiality agreements. Such documents may not be set forth on Schedule G. The Debtors reserve all of their rights to dispute or challenge the characterization of the structure of any transaction, or any document or instrument (including without limitation, any intercompany agreement) related to a creditor's claim. Certain of the contracts, agreements, and leases listed on Schedule G may have been entered into by more than one of the Debtors. In the ordinary course of business, the Debtors may have entered into agreements, written or oral, for the provision of certain services on a month-to-month or at-will basis. Such contracts may not be included on Schedule G. However, each Debtor reserves the right to assert that such agreements constitute executory contracts.

21. Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease. The Debtors reserve all rights to challenge whether any of the listed contracts, leases, agreements or other documents constitute an executory contract or unexpired lease, including if any are unexpired non-residential real property leases. Any and all of the Debtors' rights, claims and causes of action with respect to the contracts and agreements listed on Schedule G are hereby reserved and preserved.

22. In the course of their business, the Debtors serve over 400,000 patients. The Debtors believe, however, that if any such patients hold claims, they will be or are being satisfied in the ordinary course of the Debtors' business pursuant to orders of the Bankruptcy Court. Accordingly, the Debtors have not included on their Schedules any contracts or potential amounts owing to such patients and/or customers, with the exception of certain amounts for uncashed checks, as discussed in note 16 above.

23. With respect to SOFA question 1, the books and records of certain of the Debtors reflect income with a negative value. Such Debtors are no longer operating entities, however, they

*These Amended Global Notes regarding the Debtors' Schedules and SOFAs comprise an integral part of the Schedules and SOFAs and should be referred to and considered in connection with any review of them.*

previously were operating, and as a result of certain assumptions regarding revenue, appropriate specifically in the healthcare industry, made in the beginning of the year and then later adjusted, the calculation of such Debtors' revenues result in a negative value.

24. The Debtors utilize a centralized cash management system. With respect to SOFA question 3(b), the Debtors used their best efforts to determine which Debtors affected the subject transfer for the purpose of determining individuals that received transfers up to the aggregate cap of $5,475.00 during the 90 days prior to filing, however, because the applicable Debtor's information may not be readily accessible to the Debtors, the Debtors make no representations or warranties and the SOFAs shall not be deemed an admission of the accuracy of the actual transfers made by any such Debtor in the 90 days prior to filing. In the interests of protecting individuals' privacy, the Debtors have not included payments made to non-insider employees on account of wages, salaries or commissions in their responses to SOFA question 3(b). Other payments to employees have been included.

25. With respect to SOFA questions 3(c) and 23, the listing of any person or entity is not intended to be nor shall it be construed as a legal characterization of such party as an insider, and does not act as an admission of any fact, claim, right or defense, and all such right, claims and defenses are hereby reserved.

26. The Debtors and certain of their creditors set-off mutual obligations in the ordinary course of business and pursuant to trade terms agreed upon by the parties, which include, but are not limited to, certain promotional discounts and reductions provided at the time of resale of certain products. For the purposes of SOFA question 13, the Debtors have not included any such set-offs made by their creditors which were made in the ordinary course of business and pursuant to the trade terms between the Debtors and such creditor.

27. With respect to SOFA question 19(d), while the Debtors from time to time furnish financial statements to creditors other than the lenders under their prepetition financing agreements, it is not the practice of the Debtors to maintain records of such. The common practice of the Debtors is to point parties requesting financial statements to publicly available information.

28. The Debtors and their officers, employees, agents, attorneys and financial advisors do not guarantee or warrant the accuracy, completeness, or currentness of the data that is provided herein and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating or delivering the information contained herein. The Debtors and their officers, employees, agents, attorneys and financial advisors expressly do not undertake any obligation to update, modify, revise or re-categorize the information provided herein or to notify any third party should the information be updated, modified, revised or re-categorized. In no event shall the Debtors or their officers, employees, agents, attorneys or financial advisors be liable to any third party for any direct, indirect, incidental, consequential or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business or lost profits), whether foreseeable or not and however caused.

# UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

In re  CCS MEDICAL, INC.

Debtor

Case No.  09-12390

Chapter  11

## SUMMARY OF AMENDING SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts from Schedules D, E, and F to determine the total amount of the debtor's liabilities.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | No | | | | |
| B - Personal Property | No | | $22,866,340.71 | | |
| C - Property Claimed As Exempt | No | | | | |
| D - Creditors Holding Secured Claims | No | | | $453,900,000.00 | |
| E - Creditors Holding Unsecured Priority Claims | No | | | $26,720.49 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 1 | | $1,861,071.80 | |
| G - Executory Contracts and Unexpired Leases | No | | | | |
| H - Codebtors | No | | | | |
| I - Current Income of Individual Debtor(s) | No | | | | |
| J - Current Expenditures of Individual Debtor(s) | No | | | | |
| TOTAL | | 1 | $22,866,340.71 | $455,787,792.29 | |

**AMENDING**

In re **CCS MEDICAL, INC.**   Case No. **09-12390**
                           Debtor                           (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured nonpriority claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See instructions above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. | | | **Addition** | | | | |
| IVANS<br>P.O. BOX 850001<br>ORLANDO, FL 32885 | | | AP TRADE | | | | $982.90 |
| ACCOUNT NO. | | | **Addition** | | | | |
| LACKMANN CULINARY SERVICES<br>303 CROSSWAYS PARK DRIVE<br>WOODBURY, NY 11797 | | | AP TRADE | | | | $243.11 |

Sheet no. 1 of 1 sheet(s) attached to Schedule of      Subtotal    $1,226.01
Creditors Holding Unsecured Nonpriority Claims

                                                                                                   Total    $1,226.01

In re   CCS MEDICAL, INC.                                       Case No.   09-12390
                    Debtor                                                (if known)

# DECLARATION CONCERNING DEBTOR'S AMENDING SCHEDULES

DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF A CORPORATION

I, Stephen M. Saft, the Chief Financial Officer of CCS Medical, Inc., declare under penalty of perjury that I have read the foregoing summary and schedules and that they are true and correct to the best of my knowledge, information, and belief.


Date   August 25, 2009                Signature   */s/ Stephen Saft*

                                      Stephen M. Saft
                                      [Print or type name of individual signing on behalf of debtor.]

                                      Chief Financial Officer
                                      [Indicate position or relationship to debtor]


Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. § 152 and 3571.