# EXHIBIT B

TERM SHEET FOR THE REORGANIZED FIRST LIEN TERM LOAN FACILITY

## EXHIBIT B – REORGANIZED FIRST LIEN TERM LOAN FACILITY

| | |
|---|---|
| *Borrower* | Reorganized CCS Medical, Inc., a Delaware corporation (the "Borrower," "CCS," or the "Company"). |
| *Guarantors* | Each of the Borrower's direct and indirect wholly-owned domestic subsidiaries (collectively, the "Guarantors"; the Borrower and the Guarantors, collectively, the "Loan Parties"). |
| *Lenders* | The First Lien Lenders (collectively in such capacity, the "First Lien Term Lenders"). |
| *Collateral* | Subject to the DIP Roll Option, if exercised, the obligations of the Loan Parties in respect of the Reorganized First Lien Term Loan Facility shall be secured by (1) a first priority, perfected security interest in substantially all assets of the Loan Parties whether now existing or hereinafter acquired (excluding the Revolving Credit Facility Collateral) and (2) a second priority, perfected security interest in the Revolving Credit Facility Collateral, provided that (1) the collateral shall not include vehicles subject to certificates of title, real property leaseholds and contracts that contain a valid and enforceable prohibition on assignment, but only so long as such prohibition exists, equipment subject to certain permitted liens, payroll accounts, trust accounts, and certain assets of de minimis value in relation of the Borrower and each of the Guarantors Excluded Collateral and (2) no security interest shall be granted to the extent such security interest would be prohibited by applicable law or would result in material adverse tax consequences or to the extent the cost of obtaining such security interest would be excessive in relation to the benefit thereof (collectively, the "Excluded Collateral") (collectively other than the Excluded Collateral and the Revolving Credit Facility Collateral, the "Term Loan Facility Collateral"). |
| *Amount* | $150 million first lien term loan ("First Lien Term Loans"). |
| *Maturity* | Fifth anniversary of the Effective Date (the "Term Loan Maturity Date"). |
| *Interest* | Three or six month LIBOR + 600 bps, (3.0% LIBOR Floor), or Base Rate + 500 bps (Base Rate Floor equal to 3-month LIBOR + 1.0%), at the option of the Borrower, payable quarterly.<br><br>Interest on all First Lien Term Loans shall be calculated on the basis of the actual number of days elapsed over (a) in the case of LIBOR Loans, a 360-day year, and (b) in the case of Base Rate Loans, a 365- or 366-day year, as the case may be.<br><br>During the continuance of any event of default under the Reorganized First Lien Term Loan Facility documentation, to the extent permitted by applicable law, all amounts (whether principal, interest or otherwise) owing under thereunder shall bear interest at a rate per annum equal to 2.00% in excess of the applicable interest rate (including the applicable margin). |
| *Voluntary Prepayments* | The First Lien Term Loans may be prepaid at any time at the option of the Borrower, upon notice and in a minimum principal amount and in multiples |

| | |
|---|---|
| | to be agreed upon. In the event that any such prepayment is the result of refinancing of the First Lien Term Loans, such prepayment shall be accompanied by a prepayment premium in an amount equal to 5.0% of the principal amount prepaid if prepaid during the first year following the Effective Date, 3.0% of the principal amount prepaid if prepaid during the second year following the Effective Date and 1.0% of the amount prepaid if prepaid during the third year following the Effective Date (in addition to, in the case of LIBOR borrowings, breakage costs related to prepayments not made on the last day of the relevant interest period). |
| *Scheduled Amortization* | 1.0% of the original principal amount per annum, payable in equal quarterly installments. |
| *Mandatory Prepayments* | The Reorganized First Lien Term Loan Facility will be required to be prepaid in an amount equal to: <br><br> (1) 50% of annual excess cash flow, commencing with respect to the excess cash flow (to be defined) for fiscal year 2010; <br><br> (2) 100% of the after tax net cash proceeds of asset sales and other asset dispositions by the Borrower or any of its subsidiaries, subject to usual and customary exclusions and reinvestment rights; <br><br> (3) 100% of the after tax net cash insurance or condemnation proceeds, subject to usual and customary exclusions and reinvestment rights; and <br><br> (4) 100% of the net cash proceeds of the issuance or incurrence of debt (other than permitted debt) by the Borrower or any of its subsidiaries. <br><br> (5) 50% of the net cash proceeds of the issuance of equity interests in the Borrower after the Effective Date (other than in respect of the Warrants or the Management Incentive Plan). |
| *Conditions Precedent* | The Reorganized First Lien Term Loan Facility shall be subject to certain conditions precedent customary provisions for financings of this type, including entry into a customary intercreditor agreement reasonably satisfactory to the parties thereto. |
| *Representation and Warranties* | The Reorganized First Lien Term Loan Facility shall contain representations and warranties customary for financings of this type. |
| *Affirmative Covenants* | The Reorganized First Lien Term Loan Facility shall contain affirmative covenants customary for financings of this type. |
| *Negative Covenants* | The Reorganized First Lien Term Loan Facility shall contain negative covenants customary for financings of this type, including the following (subject to the carveouts set forth below and others to be negotiated): <br><br> o limitations on indebtedness, subject to carveouts including for the New Revolving Facility, the Reorganized Second Lien Term Loan Facility, up to $5 million of purchase money indebtedness and capital leases, $5 million of additional unsecured indebtedness, $5 million of unsecured subordinated indebtedness and a customary basket for debt of acquired entities (with recourse limited to the assets of the acquired entities); |

- limitations on liens, subject to carveouts including for (1) liens securing permitted capital leases and purchase money indebtedness and (2) other liens securing indebtedness not in excess of $2 million;

- limitations on investments, subject to carveouts including general basket for investments not to exceed $7.5 million;

- limitations on acquisitions, subject to carveouts including for Permitted Business Acquisitions (to be defined) if pro forma Net Leverage Ratio (to be defined) ≤ maximum level acceptable to the Debtors and the Required Consenting Lenders;

- limitations on sales, transfers, leases and other dispositions of assets outside the ordinary course of business, subject to carveouts including for transactions in which the (a) gross proceeds of such sales, transfers, leases or other dispositions of assets shall not exceed $7.5 million in the aggregate since the Effective Date and (b) consideration for which is at least 75% cash or cash equivalents;

- limitations on cash dividends and stock repurchases, subject to carveouts including for stock repurchases from management, etc. not to exceed $1 million per fiscal year; and

- payments of any kind or nature on any junior lien indebtedness or subordinated indebtedness, other than scheduled interest payments, shall not be permitted, provided, that, the Borrower shall not be permitted to pay in cash scheduled interest payments on the Second Lien Term Loans except (i) the Borrower shall be entitled to make cash payments of the Cash Pay Amount (as defined in Schedule C), and (ii) up to one half of the interest owing above the Cash Pay Amount may, at the election of the Borrower (which election shall be made no later than the first day of the applicable interest payment period), be paid in cash if at the time of the election the Net Leverage Ratio is less than or equal to 3.25x.

| | |
|---|---|
| *Financial Covenants* | Net Leverage Ratio, Interest Coverage Ratio and maximum capital expenditure covenants, each set at levels acceptable to the Debtors and the Required Consenting Lenders. |
| | The financial covenants contemplated above shall have negotiated step-downs or step-ups, as applicable, and related defined terms to be mutually agreed in the Reorganized First Lien Term Loan Facility documentation. The financial covenants contemplated above will apply to the Borrower and its subsidiaries on a consolidated basis, and the financial covenants will be first tested at the end of the first full fiscal quarter after the Closing Date. |
| *Closing Date* | The Reorganized First Lien Term Loan Facility shall become effective as of the date (the "**Closing Date**") which shall be the same date as the Effective Date. |
| *Events of Default* | The Reorganized First Lien Term Loan Credit Facility shall contain certain Events of Defaults (with grace periods and thresholds to be agreed) typical for facilities of this type, including, but not limited to: nonpayment; breach of representation or warranty; failure to perform or observe of covenants and |

| | |
|---|---|
| | obligations; default on other indebtedness in a principal amount exceeding an amount to be specified; unsatisfied judgments exceeding an amount to be specified; bankruptcy or insolvency; ERISA; change of control; and loss of validity, priority or enforceability, or impairment, of any Reorganized First Lien Term Loan Facility documentation or First Lien Facility Collateral impacting a substantial portion of the assets of the Borrower and its subsidiaries taken as a whole. |
| *Required Lenders* | "Required Lenders" shall be defined as First Lien Term Lenders holding more than 55% of the aggregate outstanding amount of First Lien Term Loans and at a minimum shall include three unaffiliated First Lien Term Lenders; provided that if no First Lien Term Lender owns (together with its affiliates) at least 30% of the aggregate outstanding amount of First Lien Term Loans, then "Required Lenders" shall mean First Lien Term Lenders holding more than 50% of the aggregate outstanding amount of First Lien Term Loans. No amendment or waiver fee shall be paid by the Loan Parties to any First Lien Term Lender for its consent unless such fee shall have been offered to all First Lien Term Lenders on the same terms. |
| *Governing Law and Forum* | State of New York. |
| *Assignments* | Lenders shall be entitled to assign Reorganized First Lien Term Loans with the consent of the Borrower, which consent may only be withheld on account of reasonable competitive considerations relating to the proposed assignee or its affiliates. Lenders shall be entitled to assign such First Lien Term Loans to other Lenders and to their affiliates without the consent of the Borrower. |
| *Trial by Jury* | All parties to the Reorganized First Lien Term Loan Facility documentation will waive the right to trial by jury. |
| *DIP Roll Option* | If the DIP Roll Option (as defined in the Plan) is exercised, the First Lien Term Loan Facility shall include a senior tranche consisting of the Loans (as defined in the Existing DIP Facility) which will have been "rolled" into the First Lien Term Loan Facility on a dollar for dollar basis on the terms set forth in the DIP Roll Option Term Sheet (as defined in the Plan) and the terms of the First Lien Term Loan Facility set forth herein shall be deemed to have been modified to include the terms of the DIP Roll Option. |
| *Miscellaneous* | The Reorganized First Lien Term Loan Facility shall contain other usual and customary provisions for facilities of this type. |