# EXHIBIT 4

LIQUIDATION ANALYSIS

# NOTES TO LIQUIDATION ANALYSIS FOR THE DEBTORS

## 1. General

The Debtors believe that the Plan meets the "best interest of creditors" test as set forth in section 1129(a)(7) of the Bankruptcy Code. There is at least one impaired Class of Claims contemplated to receive recoveries under the Plan. The Debtors believe that the members of each impaired Class will receive at least as much as they would if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. The Debtors believe the Debtors' liquidation analysis (the "Liquidation Analysis") and the conclusions set forth herein are fair and accurate, and represent the Debtors' best judgment with regard to the results of a chapter 7 liquidation of the Debtors. The Liquidation Analysis was prepared by the Debtors and is based on the Debtors' unaudited consolidated balance sheet as of November 30, 2009.

The Liquidation Analysis is prepared with information available to the Debtors as of November 30, 2009. The actual value of the Debtors' total assets can vary month to month as much as $5-10 million. The Debtors do not believe that such variation has, or will have, a material impact on the Liquidation Analysis. Claims are estimated as of an assumed Effective Date of March 31, 2010.

The Liquidation Analysis reflects the estimated cash proceeds, net of liquidation related costs that would be realized if the Debtors were to be liquidated in accordance with chapter 7 of the Bankruptcy Code. Underlying the Liquidation Analysis are a number of estimates and assumptions that, although developed and considered reasonable by Debtors, are inherently subject to significant business, economic and competitive uncertainties and contingencies beyond the control of the Debtors, and are also based upon assumptions with respect to certain liquidation decisions which could be subject to change.

Although the Debtors, other than Consolidated Holdings, are not being substantively consolidated under the Plan, the Liquidation Analysis is presented on a consolidated basis. The Debtors believe that such presentation is appropriate because the First Lien Lenders have a Lien on substantially all of the assets of value with respect to each of the Debtor Obligors and Holdings does not have any assets of value. Based on the assumptions set forth herein, the estimated chapter 7 liquidation value of all of the Debtors' assets does not exceed the aggregate amount of First Lien Lender Claims.

It is assumed that the chapter 7 liquidation of the Debtors would commence under the direction of a court-appointed trustee and would continue for an estimated period of six months, during which time all of the Debtors' major assets would either be sold or conveyed to the respective lien holders, and the cash proceeds, net of chapter 7 liquidation-related costs, would then be distributed to creditors. In addition, it is assumed that estate assets are available to pay costs associated with a chapter 7 liquidation. The chapter 7 liquidation period would allow for the collection of receivables, the sale or return of inventory, the orderly sale of fixed assets, and the orderly wind-down of daily operations. Chapter 7 liquidation values were assessed for general classes of assets by estimating the percentage recoveries that a trustee might achieve through this orderly disposition.

The Liquidation Analysis accounts for the satisfaction of certain prepetition Claims in connection with "first day orders" and the incurrence of the Fee and DIP Lender Claims during the course of the Cases.

The Liquidation Analysis assumes that chapter 7 liquidation proceeds would be distributed in accordance with section 726 of the Bankruptcy Code. If a chapter 7 liquidation were pursued for the Debtors, any value otherwise available to general unsecured creditors would be reduced (a) by the costs of the chapter 7 liquidation including fees and expenses of the trustee appointed to manage the chapter 7 liquidation, fees and expenses of professionals retained by the trustee to assist with the chapter 7 liquidation, asset disposition expenses and the carve–out for unpaid professional fees and disbursements from the chapter 7 liquidation under the DIP Credit Agreement (the "Carve–Out"), (b) by the claims of secured creditors to the extent of the value of their collateral except as described herein, and (c) by the priority and administrative costs and expenses of the chapter 7 estates, including unpaid operating expenses incurred during the chapter 7 liquidation and any accrued and unpaid professional fees in excess of the Carve–Out allowed in the chapter 7 cases.

The chapter 7 liquidation itself would trigger certain priority payments that otherwise would not be due in the ordinary course of business. These priority payments would be made in full before any distribution of proceeds to pay general unsecured claims. The chapter 7 liquidation would likely prompt certain other events to occur including the rejection of executory contracts and/or unexpired leases. No attempt has been made to estimate additional General Unsecured Claims that may result from such events under a chapter 7 liquidation scenario.

The Liquidation Analysis necessarily contains an estimate of the amount of Claims that will ultimately become Allowed Claims. Estimates for various Classes of Claims are based solely upon the Debtors' continuing review of the Debtors' books and records. No order or finding has been entered by the Bankruptcy Court estimating or otherwise fixing the amount of Claims at the projected levels set forth in the Liquidation Analysis. In preparing the Liquidation Analysis, the Debtors have projected amounts of Claims that are consistent with the estimated Claims reflected in the Disclosure Statement.

The Liquidation Analysis assumes that there are no recoveries from the pursuit of any potential preferences, fraudulent conveyances, or other causes of action and does not include the estimated costs of pursuing those actions, which the Debtors believe even if pursued would not be material to the analysis. The Debtors reserve all rights in connection with any preferences, fraudulent conveyances, or other causes of action.

The Debtors are currently undertaking a sale process of either the New Common Stock of the Reorganized Issuer or all or substantially all of the Debtors' Assets. The Sale Transactions may or may not result in a valuation that offers a higher recovery to the holders of Claims against the Debtors than the Stand Alone Transactions. However, the Debtors believe that both the Sale Transactions and the Stand Alone Transactions will achieve a higher value and distribution to holders of Allowed Claims than in a forced liquidation in chapter 7 due to the following reasons:

- Conversion to a chapter 7 liquidation would result in increased costs to the estate for chapter 7 trustee fees as well as professionals retained by the trustee to assist in winding down the estates.
- A sale where the business continues as a going concern would likely be valued higher by prospective buyers and will likely achieve greater recovery than from assets sold in a forced liquidation
- Forced liquidation may result in variability of potential proceeds available to creditors whereas the Sale Transactions may result in more definitive cash proceeds.
- The Sale Transactions and the Stand Alone Transaction will likely result in the assumption or assumption and assignment of the majority of the Debtors' existing executory Contracts and unexpired leases avoiding rejection damages.
- The Stand Alone Transactions provide for certain gifts to the holders of Allowed Trade Claims and Allowed General Unsecured Claims that would not otherwise be available to the holders of such Claims.

UNDERLYING THE LIQUIDATION ANALYSIS ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS THAT, ALTHOUGH DEVELOPED AND CONSIDERED REASONABLE BY THE DEBTORS, ARE INHERENTLY SUBJECT TO SIGNIFICANT ECONOMIC AND COMPETITIVE UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTORS, AND, WITH RESPECT TO LIQUIDATION DECISIONS, COULD BE SUBJECT TO CHANGE. ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE LIQUIDATION ANALYSIS WOULD BE REALIZED IN THE EVENT OF SUCH LIQUIDATION, AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE SHOWN HERE.

## 2. Cash

Cash includes both cash and cash equivalents. To the extent they exist, cash equivalents are comprised of any highly liquid debt instruments with a maturity of three months or less at the date of purchase.

## 3. Net Accounts Receivable

Net Accounts Receivable primarily consists of various customer and trade receivables. Estimated proceeds realized from accounts receivable under a chapter 7 liquidation are based upon the Debtors' assessment of their ability to collect those receivables taking into consideration the composition of accounts receivable in terms of payor mix and aging and the impacts that any supply interruption to customers as a result of a chapter 7 would likely have on the recovery of those receivables. Based on the Debtors' estimates, the blended recovery for accounts receivable is projected to be 32% to 62%. The Debtors estimate that the collection of accounts receivable would take approximately 6 months.

## 4. Inventories

Inventories consist primarily of diabetes testing supplies, insulin pump supplies and chronic care products held for use in the ordinary course of business. Estimated proceeds from the sale of

inventory on hand as of the chapter 7 liquidation date are based upon the Debtors' best estimate of the net value realized from the sale of such inventory. Based on the Debtors' estimates, the blended recovery for inventories is projected to be 44% to 62%. The Debtors estimate that the chapter 7 liquidation of inventories would take approximately 6 months.

**5. Prepaid Expenses**

Prepaid Expenses consist primarily of service contracts and prepaid insurance. Based on the Debtors' estimates, the blended recovery for prepaid expenses is projected to be 40% to 60%.

**6. Other Current Assets**

Other Current Assets primarily consist of rebates and miscellaneous other assets. The Debtors have reviewed the individual components of this category and have estimated that other current assets have minimal chapter 7 liquidation recovery value of 50% to 70%.

**7. Net Fixed Assets**

Net Fixed Assets consist of land, building and building improvements, computer and telephone equipment, furniture and fixtures, leasehold improvements, vehicles and insulin pumps on rental to patients. The chapter 7 liquidation recovery on these assets was based on an orderly liquidation valuation, reflecting the Debtors' best estimate. Based on the Debtors' estimates, the blended recovery for net fixed assets is projected to be 40% to 72%.

**8. Goodwill**

Goodwill represents the excess of purchase price over the fair value of net assets acquired in past transactions, and is estimated to have no chapter 7 liquidation recovery value.

**9. Customer Lists**

Customer lists represent the value of the lists of end user patients that the Debtors distribute products to. The Debtors estimated the value of the Debtors' customer lists for each product line based upon ranges of precedent acquisition data in the market, taking into account the chapter 7 liquidation process and potential brokers' fees.

**10. Net Intangibles**

Net intangibles consist of separately identifiable intangibles, such as patents, non-compete agreements, and trade names, proprietary software and direct response advertisement. The Debtors estimate the net intangibles have no chapter 7 liquidation recovery value.

## 11. Proprietary Software

Proprietary software represents the Patient Information Management System (PIMS), an accounting program, developed by the Debtors in 2005. Based on the Debtors' estimates, the blended recovery for the proprietary software is projected to be 0% to 10%.

## 12. Direct Response Advertising

Direct Response Advertising represents capitalized advertising and related costs for the Company's diabetic supply business. Based on the Debtors' estimates, the blended recovery for direct response advertisement is projected to be 0% to 10%.

## 13. Other Assets

Other Assets primarily consist of unamortized bond and financing fees and are estimated to have no chapter 7 liquidation recovery value. In addition, the Debtors have not included any recoveries in favor of the Debtors from pending litigation as such recoveries, if any, cannot be determined at this time.

## 14. Chapter 7 professional fees

During the chapter 7 liquidation period, it would be necessary for the Chapter 7 Trustee to engage the services of various professionals to assist in the chapter 7 liquidation including, but not necessarily limited to, counsel, accountants, financial advisors, investment bankers, and brokers.

## 15. Ch 7 trustee fees

Chapter 7 trustee fees are calculated based on the statutory escalating scale set forth in section 326 of the Bankruptcy Code, which provides for fees not to exceed 25.0% of the first $5,000 of proceeds, 10.0% of the next $45,000 of proceeds, 5.0% of the next $950,000 of proceeds, and reasonable compensation not to exceed 3.0% for all proceeds in excess of $1,000,000. Accordingly, Ch 7 trustee fees are assumed to be approximately 3% of the gross proceeds from the chapter 7 liquidation of the assets.

## 16. Wind down costs

The Debtors estimate that there would be costs associated with winding down the estate throughout the chapter 7 liquidation process, including costs of temporary employees and related general and administrative expenses to assist in the orderly chapter 7 liquidation of the assets and liabilities.

## 17. Fee claims

In accordance with the current treatment in the Debtors' Plan of Reorganization, Fee Claims represent the amounts owed to the Debtors restructuring advisors for fees and expenses incurred, but unpaid as of March 31, 2010.

## 18. DIP Lender Claims

The DIP Lender Claims consist of the outstanding principal drawn under the DIP of $10.0 million plus accrued interest and professional fees as of March 31, 2010. The projected hypothetical recovery for the DIP Lender Claims is 100%.

## 19. First Lien Claims

For purposes of the Liquidation Analysis, the Debtors have assumed that First Lien Lender Claims will consist of the estimated outstanding obligations under the First Lien Credit Agreement and outstanding obligations under the Swap Agreements. The First Lien Credit Agreement is assumed to have an estimated balance of $348.0 million as of the Petition Date. This amount also includes any accrued but unpaid interest as of the Petition Date. However, this amount assumes that 0.0% of the $0.9 million in L/C's outstanding are drawn. The First Lien Lender Claims, solely for purposes of this Liquidation Analysis, are assumed paid on a pro rata basis from the net chapter 7 liquidation proceeds. The projected hypothetical recovery for the estimated First Lien Lender Claims is 36.8%.

## 20. Second Lien Claims

For purposes of the Liquidation Analysis, the Debtors have assumed that Second Lien Lender Claims will consist of the estimated outstanding obligations under the Second Lien Credit Agreement. The Second Lien Credit Agreement is assumed to have an estimated balance of $112.8 million as of the Petition Date. This amount also includes any accrued but unpaid interest as of the Petition Date. The projected hypothetical recovery for the estimated Second Lien Lender Claims is 0.0%.

## 21. Administrative and Priority Claims

For purposes of the Liquidation Analysis, The Debtors have assumed that Administrative and Priority Claims consist of potential employee claims and priority tax claims. The projected hypothetical recovery for the estimated Administrative and Priority Claims is 0.0%.

## 22. Unsecured Claims

It should be noted that the Liquidation Analysis does not attempt to estimate potential additional Unsecured Claims that would likely arise as a result of the rejection of any executory contracts and/or leases, and Claims arising in connection with the Debtors' failure to perform under such existing contracts and/or leases. Such additional Claims would likely result from a cessation of operations as contemplated in a chapter 7 liquidation and would likely be substantial in amount.

Total Unsecured Claims are assumed to be paid on a pro rata basis from the net chapter 7 liquidation proceeds available, if any, after the payment of all other Claims, other than Existing Securities Law Claims. The Debtors' Unsecured Claims are estimated to be $96.2 million. For purposes of the Liquidation Analysis and calculating Unsecured Claims, the Debtors have assumed that PIK Lender Claims will consist of the estimated outstanding obligations of CCS Acquisition Holdings-Sub Corporation under the PIK Credit Agreement. The PIK Credit Agreement is assumed to have an estimated balance of $83.1 million as of the Commencement Date. Additionally, Claims that would otherwise be classified as Trade Claims under the Plan are categorized as Unsecured Claims for purposes of the Liquidation Analysis. Other Unsecured Claims relate to other vendors, refunds, services, leases, employee claims and rent obligations. The projected hypothetical recovery for the estimated Unsecured Claims is 0.0%.

**Summary of Estimated Asset Liquidation / Recovery Values**

| ($ in millions) Statement of Assets | Note | Book values as of 11/30/2009 (unaudited) | Estimated Recovery % Low | Estimated Recovery % High | Estimated Liquidation Value Low | Estimated Liquidation Value High | Estimated Liquidation Value Mid |
|---|---|---|---|---|---|---|---|
| Cash | 2 | $ 39.1 | 100% | 100% | $ 39.1 | $ 39.1 | $ 39.1 |
| Net accounts receivable | 3 | 71.5 | 32% | 62% | 22.8 | 44.5 | 33.7 |
| Inventory | 4 | 11.3 | 44% | 62% | 5.0 | 7.0 | 6.0 |
| Prepaid expenses | 5 | 2.2 | 40% | 60% | 0.9 | 1.3 | 1.1 |
| Other current assets | 6 | 4.4 | 50% | 70% | 2.2 | 3.1 | 2.6 |
| Net fixed assets | 7 | 21.3 | 40% | 72% | 8.5 | 15.3 | 11.9 |
| Goodwill | 8 | 87.9 | 0% | 0% | - | - | - |
| Customer lists | 9 | 1.7 | | | 31.4 | 85.2 | 58.3 |
| Net intangibles | 10 | 8.5 | 0% | 0% | - | - | - |
| Proprietary software | 11 | 0.2 | 0% | 10% | - | 0.0 | 0.0 |
| Direct response advertising | 12 | 6.9 | 0% | 10% | - | 0.7 | 0.3 |
| Other | 13 | 6.8 | 0% | 0% | - | - | - |
| Total | | $ 261.9 | | | $ 109.9 | $ 196.3 | $ 153.1 |

| | | |
|---|---|---|
| Net estimated proceeds available for distribution before liquidation costs midpoint of range | | $ 153.1 |
| Liquidation costs: | | |
| Chapter 7 professional fees | 14 | (0.5) |
| Trustee fees | 15 | (4.6) |
| Wind down costs | 16 | (2.4) |
| Total liquidation costs | | (7.5) |
| Net Estimated Proceeds available for creditor distribution, midpoint of range | | $ 145.6 |

| | Note | Claim Amount | Recovery Amount | Recovery % |
|---|---|---|---|---|
| Fee Claims | 17 | $ 5.2 | $ 5.2 | 100% |
| DIP Lender claims | 18 | 12.1 | 12.1 | 100.0% |
| First lien claims | 19 | 348.0 | 128.2 | 36.8% |
| Second lien claims | 20 | 112.8 | - | - |
| Administrative and Priority Claims | 21 | 8.9 | - | - |
| Unsecured claims | 22 | | | |
| Holdco PIK debt | | 83.1 | - | - |
| Other unsecured claims | | 13.1 | - | - |
| Total unsecured claims | | $ 96.2 | - | - |