# EXHIBIT A

CCS Medical Holdings, Inc.
CCS Acquisition Holding-Sub Corporation
CCS Medical, Inc.
CCS Star, LLC
Chronic Care Solutions, Inc.
DEGC Enterprises (U.S.), Inc.
KeyMed, Inc.
Medical Express Depot, Inc.
Medical Holdings, Inc.
Medship Direct, Inc.
MedStar Diabetic Supply, LP
MP TotalCare Medical, Inc.
MP TotalCare Services, Inc.
MP TotalCare Supply, Inc.
MP TotalCare, Inc.
MPTC Holdings, Inc.
Sanvita, Inc.
Secure Care Medical, Inc.
TotalCare Wholesale, Inc.

**EXHIBIT B**

TERM SHEET FOR THE REORGANIZED FIRST LIEN TERM LOAN FACILITY

# EXHIBIT B -- REORGANIZED FIRST LIEN TERM LOAN FACILITY

| | |
|---|---|
| *Borrower* | Reorganized CCS Medical, Inc., a Delaware corporation (the "Borrower," "CCS," or the "Company"). |
| *Guarantors* | Each of the Borrower's direct and indirect wholly-owned domestic subsidiaries (collectively, the "Guarantors"; the Borrower and the Guarantors, collectively, the "Loan Parties"). |
| *Lenders* | The First Lien Lenders (collectively in such capacity, the "First Lien Term Lenders"). |
| *Collateral* | Subject to the DIP Roll Option, if exercised, the obligations of the Loan Parties in respect of the Reorganized First Lien Term Loan Facility shall be secured by (1) a first priority, perfected security interest in substantially all assets of the Loan Parties whether now existing or hereinafter acquired (excluding the Revolving Credit Facility Collateral) and (2) a second priority, perfected security interest in the Revolving Credit Facility Collateral, provided that (1) the collateral shall not include vehicles subject to certificates of title, real property leaseholds and contracts that contain a valid and enforceable prohibition on assignment, but only so long as such prohibition exists, equipment subject to certain permitted liens, payroll accounts, trust accounts, and certain assets of de minimis value in relation of the Borrower and each of the Guarantors Excluded Collateral and (2) no security interest shall be granted to the extent such security interest would be prohibited by applicable law or would result in material adverse tax consequences or to the extent the cost of obtaining such security interest would be excessive in relation to the benefit thereof (collectively, the "Excluded Collateral") (collectively other than the Excluded Collateral and the Revolving Credit Facility Collateral, the "Term Loan Facility Collateral"). |
| *Amount* | $150 million first lien term loan ("First Lien Term Loans"). |
| *Maturity* | Fifth anniversary of the Effective Date (the "Term Loan Maturity Date"). |
| *Interest* | Three or six month LIBOR + 600 bps, (3.0% LIBOR Floor), or Base Rate + 500 bps (Base Rate Floor equal to 3-month LIBOR + 1.0%), at the option of the Borrower, payable quarterly. |
| | Interest on all First Lien Term Loans shall be calculated on the basis of the actual number of days elapsed over (a) in the case of LIBOR Loans, a 360-day year, and (b) in the case of Base Rate Loans, a 365- or 366-day year, as the case may be. |
| | During the continuance of any event of default under the Reorganized First Lien Term Loan Facility documentation, to the extent permitted by applicable law, all amounts (whether principal, interest or otherwise) owing under thereunder shall bear interest at a rate per annum equal to 2.00% in excess of the applicable interest rate (including the applicable margin). |
| *Voluntary Prepayments* | The First Lien Term Loans may be prepaid at any time at the option of the Borrower, upon notice and in a minimum principal amount and in multiples |

| | |
|---|---|
| | to be agreed upon. In the event that any such prepayment is the result of refinancing of the First Lien Term Loans, such prepayment shall be accompanied by a prepayment premium in an amount equal to 5.0% of the principal amount prepaid if prepaid during the first year following the Effective Date, 3.0% of the principal amount prepaid if prepaid during the second year following the Effective Date and 1.0% of the amount prepaid if prepaid during the third year following the Effective Date (in addition to, in the case of LIBOR borrowings, breakage costs related to prepayments not made on the last day of the relevant interest period). |
| *Scheduled Amortization* | 1.0% of the original principal amount per annum, payable in equal quarterly installments. |
| *Mandatory Prepayments* | The Reorganized First Lien Term Loan Facility will be required to be prepaid in an amount equal to:<br><br>(1) 50% of annual excess cash flow, commencing with respect to the excess cash flow (to be defined) for fiscal year 2010;<br><br>(2) 100% of the after tax net cash proceeds of asset sales and other asset dispositions by the Borrower or any of its subsidiaries, subject to usual and customary exclusions and reinvestment rights;<br><br>(3) 100% of the after tax net cash insurance or condemnation proceeds, subject to usual and customary exclusions and reinvestment rights; and<br><br>(4) 100% of the net cash proceeds of the issuance or incurrence of debt (other than permitted debt) by the Borrower or any of its subsidiaries.<br><br>(5) 50% of the net cash proceeds of the issuance of equity interests in the Borrower after the Effective Date (other than in respect of the Warrants or the Management Incentive Plan). |
| *Conditions Precedent* | The Reorganized First Lien Term Loan Facility shall be subject to certain conditions precedent customary provisions for financings of this type, including entry into a customary intercreditor agreement reasonably satisfactory to the parties thereto. |
| *Representation and Warranties* | The Reorganized First Lien Term Loan Facility shall contain representations and warranties customary for financings of this type. |
| *Affirmative Covenants* | The Reorganized First Lien Term Loan Facility shall contain affirmative covenants customary for financings of this type. |
| *Negative Covenants* | The Reorganized First Lien Term Loan Facility shall contain negative covenants customary for financings of this type, including the following (subject to the carveouts set forth below and others to be negotiated):<br><br>    ○ limitations on indebtedness, subject to carveouts including for the New Revolving Facility, the Reorganized Second Lien Term Loan Facility, up to $5 million of purchase money indebtedness and capital leases, $5 million of additional unsecured indebtedness, $5 million of unsecured subordinated indebtedness and a customary basket for debt of acquired entities (with recourse limited to the assets of the acquired entities); |

| | |
|---|---|
| | • limitations on liens, subject to carveouts including for (1) liens securing permitted capital leases and purchase money indebtedness and (2) other liens securing indebtedness not in excess of $2 million;

• limitations on investments, subject to carveouts including general basket for investments not to exceed $7.5 million;

• limitations on acquisitions, subject to carveouts including for Permitted Business Acquisitions (to be defined) if pro forma Net Leverage Ratio (to be defined) ≤ maximum level acceptable to the Debtors and the Required Consenting Lenders;

• limitations on sales, transfers, leases and other dispositions of assets outside the ordinary course of business, subject to carveouts including for transactions in which the (a) gross proceeds of such sales, transfers, leases or other dispositions of assets shall not exceed $7.5 million in the aggregate since the Effective Date and (b) consideration for which is at least 75% cash or cash equivalents;

• limitations on cash dividends and stock repurchases, subject to carveouts including for stock repurchases from management, etc. not to exceed $1 million per fiscal year; and

• payments of any kind or nature on any junior lien indebtedness or subordinated indebtedness, other than scheduled interest payments, shall not be permitted, provided, that, the Borrower shall not be permitted to pay in cash scheduled interest payments on the Second Lien Term Loans except (i) the Borrower shall be entitled to make cash payments of the Cash Pay Amount (as defined in Schedule C), and (ii) up to one half of the interest owing above the Cash Pay Amount may, at the election of the Borrower (which election shall be made no later than the first day of the applicable interest payment period), be paid in cash if at the time of the election the Net Leverage Ratio is less than or equal to 3.25x. |
| *Financial Covenants* | Net Leverage Ratio, Interest Coverage Ratio and maximum capital expenditure covenants, each set at levels acceptable to the Debtors and the Required Consenting Lenders.

The financial covenants contemplated above shall have negotiated step-downs or step-ups, as applicable, and related defined terms to be mutually agreed in the Reorganized First Lien Term Loan Facility documentation. The financial covenants contemplated above will apply to the Borrower and its subsidiaries on a consolidated basis, and the financial covenants will be first tested at the end of the first full fiscal quarter after the Closing Date. |
| *Closing Date* | The Reorganized First Lien Term Loan Facility shall become effective as of the date (the "Closing Date") which shall be the same date as the Effective Date. |
| *Events of Default* | The Reorganized First Lien Term Loan Credit Facility shall contain certain Events of Defaults (with grace periods and thresholds to be agreed) typical for facilities of this type, including, but not limited to: nonpayment; breach of representation or warranty; failure to perform or observe of covenants and |

| | |
|---|---|
| | obligations; default on other indebtedness in a principal amount exceeding an amount to be specified; unsatisfied judgments exceeding an amount to be specified; bankruptcy or insolvency; ERISA; change of control; and loss of validity, priority or enforceability, or impairment, of any Reorganized First Lien Term Loan Facility documentation or First Lien Facility Collateral impacting a substantial portion of the assets of the Borrower and its subsidiaries taken as a whole. |
| *Required Lenders* | "Required Lenders" shall be defined as First Lien Term Lenders holding more than 55% of the aggregate outstanding amount of First Lien Term Loans and at a minimum shall include three unaffiliated First Lien Term Lenders; provided that if no First Lien Term Lender owns (together with its affiliates) at least 30% of the aggregate outstanding amount of First Lien Term Loans, then "Required Lenders" shall mean First Lien Term Lenders holding more than 50% of the aggregate outstanding amount of First Lien Term Loans. No amendment or waiver fee shall be paid by the Loan Parties to any First Lien Term Lender for its consent unless such fee shall have been offered to all First Lien Term Lenders on the same terms. |
| *Governing Law and Forum* | State of New York. |
| *Assignments* | Lenders shall be entitled to assign Reorganized First Lien Term Loans with the consent of the Borrower, which consent may only be withheld on account of reasonable competitive considerations relating to the proposed assignee or its affiliates. Lenders shall be entitled to assign such First Lien Term Loans to other Lenders and to their affiliates without the consent of the Borrower. |
| *Trial by Jury* | All parties to the Reorganized First Lien Term Loan Facility documentation will waive the right to trial by jury. |
| *DIP Roll Option* | If the DIP Roll Option (as defined in the Plan) is exercised, the First Lien Term Loan Facility shall include a senior tranche consisting of the Loans (as defined in the Existing DIP Facility) which will have been "rolled" into the First Lien Term Loan Facility on a dollar for dollar basis on the terms set forth in the DIP Roll Option Term Sheet (as defined in the Plan), and the terms of the First Lien Term Loan Facility set forth herein shall be deemed to have been modified to include the terms of the DIP Roll Option. |
| *Miscellaneous* | The Reorganized First Lien Term Loan Facility shall contain other usual and customary provisions for facilities of this type. |

# EXHIBIT C

TERM SHEET FOR THE REORGANIZED SECOND LIEN TERM LOAN FACILITY

## Exhibit C—Reorganized Second Lien Term Loan Facility

| | |
|---|---|
| *Borrower* | Reorganized CCS Medical, Inc., a Delaware corporation (the "Borrower," "CCS," or the "Company"). |
| *Guarantors* | Each of the Borrower's direct and indirect wholly-owned domestic subsidiaries (collectively, the "Guarantors"; the Borrower and the Guarantors, collectively, the "Loan Parties"). |
| *Lenders* | The First Lien Lenders (collectively in such capacity, the "Second Lien Term Lenders"). |
| *Collateral* | Subject to the DIP Roll Option, if exercised, the obligations of the Loan Parties in respect of the Reorganized Second Lien Term Loan Facility shall be secured by (1) a second priority, perfected security interest in the Term Loan Facility Collateral and (2) a third priority, perfected security interest in the Revolving Credit Facility Collateral. |
| *Amount* | $50 million Second Lien Term Loan ("Second Lien Term Loan"). |
| *Final Maturity* | Sixth anniversary of the Effective Date (the "Term Loan Maturity Date"). |
| *Interest* | Three or six month LIBOR + 800 bps, (3.0% LIBOR Floor), or Base Rate + 700 bps (Base Rate Floor equal to 3-month LIBOR + 1.0%), at the option of the Borrower, payable quarterly.<br><br>The Borrower will be required to pay, in cash, the amount of interest accrued at LIBOR (with a floor of 300 basis points) (the "Cash Pay Amount"). Any interest above the Cash Pay Amount shall be added, on the relevant interest payment date, to the amount outstanding under the Reorganized Second Lien Term Loan Facility (any amount so added, a "PIK Payment") and shall thereafter bear interest as set forth above; provided, however, that the Borrower may elect, subject to the restrictions on making such election contained in the Reorganized First Lien Term Loan Facility, to pay interest above the Cash Pay Amount in cash. Interest on the Second Lien Term Loan shall be calculated on the basis of the actual number of days elapsed over (a) in the case of LIBOR Loans, a 360-day year, and (b) in the case of Base Rate Loans, a 365- or 366-day year, as the case may be.<br><br>During the continuance of any payment or bankruptcy default under the Reorganized Second Lien Term Loan Facility documentation, to the extent permitted by applicable law, all amounts (whether principal, interest or otherwise) owing under thereunder shall bear interest at a rate per annum equal to 2.00% in excess of the applicable interest rate (including the applicable margin). |
| *Voluntary Prepayments* | Following the repayment in full of the First Lien Term Loan Facility, the Second Lien Term Loans may be prepaid at any time at the option of the Borrower, upon notice and in a minimum principal amount and in multiples to be agreed upon. In the event that such prepayment is the result of refinancing of the Second Lien Term Loans, then such prepayment shall be |

| | |
|---|---|
| | accompanied by a prepayment premium in an amount equal to 5.0% of the principal amount prepaid if prepaid during the first year following the Effective Date, 3.0% of the principal amount prepaid if prepaid during the second year following the Effective Date and 1.0% of the amount prepaid if prepaid during the third year following the Effective Date (in addition to, in the case of LIBOR borrowings, breakage costs related to prepayments not made on the last day of the relevant interest period). |
| *Scheduled Amortization* | None |
| *Mandatory Prepayments* | Following the payment in full of the Reorganized First Lien Term Loan Facility, the Reorganized Second Lien Term Loan Facility will be required to be prepaid by an amount equal to: <br><br> (1) 100% of the after tax net cash proceeds of asset sales and other asset dispositions by the Borrower or any of its subsidiaries, subject to usual and customary exclusions and reinvestment rights; <br><br> (2) 100% of the after tax net cash insurance or condemnation proceeds, subject to usual and customary exclusions and reinvestment rights; and <br><br> (3) 100% of the net cash proceeds of the issuance or incurrence of debt (other than permitted debt) by the Borrower or any of its subsidiaries. |
| *Conditions Precedent* | The Reorganized Second Lien Term Loan Facility shall be subject to certain conditions precedent customary provisions for financings of this type, including entry into a customary intercreditor agreement reasonably satisfactory to the parties thereto. |
| *Representations and Warranties* | The Reorganized Second Lien Term Loan Facility shall contain representations and warranties customary for financings of this type. |
| *Affirmative Covenants* | The Reorganized Second Lien Term Loan Facility shall contain representations and warranties customary for financings of this type. |
| *Negative Covenants* | The Reorganized Second Lien Term Loan Facility shall contain negative covenants customary for financings of this type, including the following (subject to the carveouts set forth below and others to be negotiated): <br><br>     o  limitations on indebtedness, subject to carveouts including for the New Revolving Credit Facility, the Reorganized First Lien Term Loan Facility, up to $5.5 million of purchase money indebtedness and capital leases, $5.5 million of additional unsecured indebtedness, $5.5 million of unsecured subordinated indebtedness and a customary basket for debt of acquired entities (with recourse limited to the acquired entities); <br><br>     o  limitations on liens, subject to carveouts including for (1) liens securing permitted capital leases and purchase money indebtedness and (2) other liens securing indebtedness not in excess of $2.5 million; <br><br>     o  limitations on investments, subject to carveouts including general basket for investments not to exceed $8.5 million; <br><br>     o  limitations on acquisitions, subject to carveouts including for |

| | |
|---|---|
| | Permitted Business Acquisitions (to be defined) if pro forma Net Leverage Ratio (to be defined) ≤ maximum level acceptable to the Debtors and the Required Consenting Lenders;<br><br>◦ limitations on sales, transfers, leases and other dispositions of assets outside the ordinary course of business, subject to carveouts including for transactions in which the (a) gross proceeds of such sales, transfers, leases or other dispositions of assets shall not exceed $8.5 million in the aggregate since the Effective Date and (b) consideration for which is at least 75% cash or cash equivalents; and<br><br>◦ limitations on cash dividends and stock repurchases, subject to carveouts including for stock repurchases from management, etc. not to exceed $1.5 million per fiscal year. |
| *Events of Default* | The Reorganized Second Lien Term Loan Credit Facility shall contain certain Events of Defaults (with grace periods and thresholds to be agreed) typical for facilities of this type, including, but not limited to: nonpayment; breach of representation or warranty; failure to perform or observe of covenants and obligations; default on other indebtedness in a principal amount exceeding an amount to be specified; unsatisfied judgments exceeding an amount to be specified; bankruptcy or insolvency; ERISA; change of control; and loss of validity, priority or enforceability, or impairment, of any Second Lien Term Loan Credit Facility documentation or Second Lien Facility Collateral impacting a substantial portion of the assets of the Borrower and its subsidiaries taken as a whole. |
| *Conditions Precedent* | The Reorganized Second Lien Term Loan Facility shall be subject to certain conditions precedent customary provisions for financings of this type, including entry into a customary intercreditor agreement reasonably satisfactory to the parties thereto. |
| *Closing Date* | The Reorganized Second Lien Term Loan Facility shall become effective as of the date (the "Closing Date") which shall be the same date as the Effective Date. |
| *Required Lenders* | "Required Lenders" shall be defined as Second Lien Term Lenders holding more than 55% of the aggregate outstanding amount of Second Lien Term Loans and at a minimum shall include three unaffiliated Second Lien Term Lenders; provided that if no Second Lien Term Lender owns (together with its affiliates) at least 30% of the aggregate outstanding amount of Second Lien Term Loans, then "Required Lenders" shall mean Second Lien Term Lenders holding more than 50% of the aggregate outstanding amount of Second Lien Term Loans. No amendment or waiver fee shall be paid by the Loan Parties to any Second Lien Term Lender for its consent unless such fee shall have been offered to all Second Lien Term Lenders on the same terms. |
| *Governing Law and Forum* | State of New York. |
| *Assignments* | Lenders shall be entitled to assign Reorganized Second Lien Term Loans with the consent of the Borrower, which consent may only be withheld on account of reasonable competitive considerations relating to the proposed |

| | |
|---|---|
| | assignee or its affiliates. Lenders shall be entitled to assign such Second Lien Term Loans to other Lenders and to their affiliates without the consent of the Borrower. |
| *Waiver of Trial by Jury* | All parties to the Reorganized Second Lien Term Loan Facility documentation will waive the right to trial by jury. |
| *DIP Roll Option* | If the DIP Roll Option (as defined in the Plan) is exercised, the terms of the Second Lien Term Loan Facility shall be deemed to have been modified to include the terms of the DIP Roll Option, as applicable. |
| *Miscellaneous* | The Reorganized Second Lien Term Loan Facility shall contain other usual and customary provisions for facilities of this type. |

# EXHIBIT D

TERM SHEET FOR THE NEW REVOLVING CREDIT FACILITY

## EXHIBIT D – NEW REVOLVING CREDIT FACILITY

| | |
|---|---|
| *Borrower* | Reorganized CCS Medical, Inc., a Delaware corporation (the "Borrower," "CCS," or the "Company"). |
| *Guarantors* | Each of the Borrower's direct and indirect wholly-owned domestic subsidiaries (collectively, the "Guarantors"; the Borrower and the Guarantors, collectively, the "Loan Parties"). |
| *Lenders* | Such lenders as may become parties to the New Revolving Credit Facility from time to time (collectively, the "Revolving Lenders"). |
| *Collateral* | The obligations of the Loan Parties in respect of the New Revolving Credit Facility may be secured by a first priority, perfected security interest in substantially all accounts receivable, inventory and other related assets of the Loan Parties, subject to customary exceptions (the "Revolving Credit Facility Collateral"), together with such other liens or licenses as may be agreed by the Required Consenting Holders.  The Loan Parties, Revolving Lenders and lenders under the Reorganized First Lien Term Loan Facility and the Reorganized Second Lien Term Loan Facility (or, as the case may be, any agent therefor) shall be parties to an Intercreditor Agreement reasonably satisfactory to the parties thereto. |
| *Use of Proceeds* | The proceeds of the New Revolving Credit Facility shall be used to refinance the DIP Loans and provide liquidity for general corporate purposes and letters of credit. |
| *Amount* | Approximately $25 million (or such other amount as the Debtors and the Required Consenting Lenders shall reasonably agree) commitment to an Asset Based Revolver (which may be subject to a borrowing base), including the letter of credit sub-facility, subject to expansion to $35 million on customary conditions. |
| *Letter of Credit Sub-Facility* | Letter of credit sub-facility of not less than $3.5 million. |
| *Maturity* | No earlier than the fourth anniversary of the Effective Date of the Plan (the "Revolver Maturity Date"). |
| *Closing Date* | The New Revolving Credit Facility shall become effective as of the date (the "Closing Date") which shall be on or after the Effective Date. |
| *Other Terms* | Usual and customary terms for facilities of this type acceptable to the Borrower, the Revolving Lenders and the Required Consenting Lenders. |

# EXHIBIT E

DIP ROLL OPTION TERM SHEET

# CCS Medical, Inc.
## Summary of Proposed Terms & Conditions
### $10,000,000 DIP Roll Option Term Sheet

| | |
|---|---|
| **Existing DIP Facility:** | $10,000,000 Debtor-in-Possession Credit Agreement, dated as of July 14, 2009, among CCS Medical Holdings, Inc., CCS Medical, Inc., certain of their affiliates, the lenders party thereto and Imperial Capital, LLC, as Administrative Agent, Collateral Agent and Arranger (the "Existing DIP Facility") |
| **Plan:** | Second Amended Joint Chapter 11 Plan of Reorganization for CCS Medical, Inc. and its Affiliated Debtors (the "Plan"; capitalized terms used herein and not otherwise defined have the meanings ascribed to them in the Plan) |
| **Borrower:** | Same as Existing DIP Facility |
| **Guarantors:** | Same as Existing DIP Facility |
| **DIP Roll Facility:** | The Loans (as defined in the Existing DIP Facility) will be "rolled" into the Reorganized First Lien Term Loan Facility, on a dollar for dollar basis, as a new senior tranche under that facility (the "DIP Roll Loans"). |
| **DIP Roll Lenders:** | Lenders under Existing DIP Facility |
| **Maturity:** | Three (3) months from the Effective Date, with additional three (3) month extension option, subject only to notice and the payment of the Extension Fee referred to below. |
| **Amortization:** | None. |
| **Documentation:** | The DIP Roll Facility will be evidenced and governed by the credit agreement evidencing the Reorganized First Lien Term Loan Facility (the "Exit First Lien Credit Agreement") in substantially the form set forth in the Plan Supplement and the other "Loan Documents" contemplated thereby, subject to modifications necessary to implement the terms hereof, such modifications to be satisfactory to the DIP Roll Lenders in their sole discretion. |
| **Interest:** | The DIP Roll Loans will bear interest at a rate equal to LIBOR plus 9.0%, subject to a 3.0% LIBOR floor and shall be subject to an increase to LIBOR (with a 3.0% floor) plus 12.0% on the date that is three (3) months following the Effective Date to the extent the Borrower chooses to extend the maturity. Interest will be payable monthly, in cash, in arrears, calculated on the basis of the actual number of days elapsed in a 360-day year. |
| **Default Interest:** | The then-applicable interest rate plus 2.0% per annum. |

| | |
|---|---|
| **Fees:** | **Commitment Fee.** 1.5% of the aggregate amount of the DIP Roll Loans, payable on the Effective Date to the DIP Roll Lenders in proportion to their share of the DIP Roll Loans, irrespective of whether the DIP Roll Facility is implemented. |
| | **Funding Fee.** 1.5% of the aggregate amount of the DIP Roll Loans, payable on the Effective Date to the DIP Roll Lenders in proportion to their share of the DIP Roll Loans, subject to consummation of the DIP Roll Facility. |
| | Such fees shall be fully earned and payable in cash on the Effective Date. |
| | **Extension Fee.** 2.0% of the aggregate amount of the DIP Roll Loans, payable on the date that is three (3) months following the Effective Date in the event that he Borrower chooses to extend the maturity of the DIP Roll Facility beyond such date. |
| **Prepayments:** | Mandatory principal prepayments required by the Exit First Lien Credit Agreement, and all voluntary prepayments thereunder, shall be applied first to payment of the DIP Roll Facility until all obligations in respect thereof shall have been paid in full, in cash. |
| **Priority and Liens:** | All obligations of the Borrower and Guarantors to the DIP Roll Lenders under the Loan Documents in respect of the DIP Roll Facility, including, without limitation, all principal and accrued interest, costs, fees and expenses, shall, be secured by first priority liens on (i) the collateral securing the Reorganized First Lien Term Loan Facility pursuant to and in accordance with the Loan Documents and (ii) to the extent not included in clause (i), any other "Collateral" as defined in the Existing DIP Facility pursuant to the court order confirming the Plan (the "DIP Roll Liens"), senior to the liens securing all other loans and obligations under the Reorganized First Lien Term Loan Facility and under the Reorganized Second Lien Term Loan Facility, including pursuant to waterfall provisions and intercreditor agreements satisfactory to the DIP Roll Lenders in their sole discretion. |
| | The loans and other payment obligations under the Reorganized First Lien Term Loan Facility (other than the DIP Roll Facility obligations) and Reorganized Second Lien Term Loan Facility will be subordinated to the DIP Roll Facility obligations. |
| **Conditions Precedent to Availability:** | Satisfaction of all conditions precedent to the Effective Date; non-availability of the New Revolving Credit Facility as a result of a pending appeal of the Confirmation Order; satisfaction of the DIP Roll Lenders with the Loan Documents. |
| **Representations and Warranties:** | As set forth in the Exit First Lien Credit Agreement. |
| **Affirmative and Negative** | As set forth in the Exit First Lien Credit Agreement, as modified to permit |

| | |
|---|---|
| **Covenants:** | the DIP Roll Loans. |
| **Financial Covenants:** | As set forth in the Exit First Lien Credit Agreement, as modified to reflect the DIP Roll Loans. |
| **Events of Default:** | As set forth in the Exit First Lien Credit Agreement. |
| **Expenses and Indemnity:** | The Credit Agreement will contain provisions for the payment of expenses and indemnification customary for financings of this type, including, without limitation, the payment of all reasonable costs and expenses of the DIP Roll Lenders (and the reasonable fees and expenses of their counsel and other advisors) incurred in connection with the negotiation, preparation, execution and delivery of the Loan Documents and this Term Sheet. |
| **Assignments and Participations:** | As set forth in the Exit First Lien Credit Agreement. |
| **Required Lenders:** | All votes under the Exit First Lien Credit Agreement which amend, modify or otherwise affect the rights or duties of the DIP Roll Lenders in their capacity as DIP Roll Lenders will require the separate approval of DIP Roll Lenders holding not less than two thirds of the DIP Roll Loans (without waiver of any otherwise applicable "affected lender" or 100% voting requirements). |
| **Governing Law:** | The State of New York. |